EDIBLES CORPORATION, Petitioner-Appellee, v. WEST ONTARIO STREET LIMITED PARTNERSHIP *et al.*, Respondents-Appellees (Mary Faucher, Indiv. and as Co-Trustee, *et al.*, Adverse Claimants-Appellants).

First District (4th Division)   No. 1—94—0553

Opinion filed June 29, 1995.

Jill A. Dougherty, of Kelly, Olson, Rogan & Siepker, of Chicago, for appellants.

Domenic J. Lupo, of O'Brien & O'Brien, of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

The parties to this appeal created a security interest in the form of a pledge in a deposit bank account but required each other to endorse checks written from that account. The issue we address is whether the two-signature requirement defeats an otherwise valid pledge under article 9 of the Uniform Commercial Code (UCC) (810 ILCS 5/9—101 *et seq.* (West 1992)).

The Edibles Corporation obtained a judgment against Baja Beach Company in the amount of $35,898.23 on November 8, 1993. Edibles then filed a motion in the circuit court on November 22, 1993, to order North Bank of Streeterville to turn over a deposit account at the

bank under the name of Baja Beach Company. Mary Faucher and Frank Siepker filed an appearance and objected to Edibles' motion, alleging that they held a valid security interest in the account. After a hearing, the trial court ordered North Bank to turn over the account to Edibles, finding that Faucher and Siepker did not have a perfected security interest in the account. Faucher and Siepker appeal this order and argue that the court erred as a matter of law. We agree and reverse.

Faucher and Siepker presented evidence at the hearing that they and Baja entered into a security agreement on May 20, 1993. The agreement read in part:

"SECURITY AGREEMENT made this 20th day of May, 1993, between Baja Beach Company, Inc., a corporation (Hereinafter referred to as 'Pledgor') and Mary F. Faucher, individually, Mary F. Faucher, Co-Trustee and Frank F. Siepker, Co-Trustee, (hereinafter referred to as 'Secured Party').

WHEREAS, for and in consideration of the execution of this Security Agreement by Pledgor, Secured Party is Lessor under a certain Lease for the premises at 223 West Ontario Street, Chicago, Illinois (the 'Lease'); and

WHEREAS, Secured Party desires to obtain, and Pledgor desires to grant, a security interest in certain property of Pledgor, now owned or hereafter acquired, and the proceeds thereof, to secure payment of [mechanic lien claims against the Ontario property totalling $44,691.29];

\* \* \*

As security for the payment of the obligations \*\*\*, Pledgor hereby pledges, assigns and grants to Secured Party a security interest in and to the following (the 'Collateral'): That certain Checking Account bearing number 602435500, dated 5/20/93, issued by North Bank of Streeterville for the account of Pledgor, in the amount of $44,691.29 \*\*\* (the 'Account')."

The agreement also stated:

"Upon the happening of any Event of Default \*\*\*, at the option of Secured Party, any and all Obligation secured hereby shall become immediately due and payable without presentment or demand or any notice to Pledgor \*\*\*, and Secured Party shall have and may exercise any or all of the rights and remedies of a secured party under the Uniform Commercial Code as adopted in the State of Illinois \*\*\*."

A representative of North Bank signed an acknowledgment of this agreement which read in part:

"Vice President of North Bank of Streeterville, ('Bank') hereby acknowledges the assignment by \*\*\* Pledgor of Account

#602435500 *** to Pledgee *** and agrees to the conditions provided therein. We understand that the Account *** will remain in our possession only as limited agent and bailee holding the Account on Pledgee's behalf, until the Obligations secured thereby (the 'Obligations') is [sic] satisfied in full."

The acknowledgment also stated:

"Upon receiving written notice of default from Pledgee and upon the written consent of the joint signatories on the Account, we will pay directly to Pledgee any and all amounts in respect of the Account that would otherwise be payable to Pledgor."

The joint signatories on the account were the secured party and the pledgor.

Edibles argues that written consent of the joint signatories prevents this agreement from being a validly perfected security interest under article 9 of the UCC.

■■ Article 9 of the UCC governs secured transactions and provides "a comprehensive scheme for the regulation of security interests in personal property and fixtures." (810 ILCS Ann. 5/9—101, Uniform Commercial Code Comment (Smith-Hurd 1993).) Illinois recently amended its UCC statutes to include deposit accounts among the security interests covered under article 9. (See 810 ILCS 5/9—302(h) (West Supp. 1993).) Section 9—302 provides that a security interest in a deposit account may be perfected when written notice is given to the organization with whom the deposit account is maintained. (810 ILCS 5/9—302 (West Supp. 1993).) Under section 9—305, collateral held by a bailee is considered to be in possession of the secured party when the bailee receives notice of the secured party's interest. Section 9—305 states: "A security interest in *** money *** may be perfected by the secured party's taking possession of the collateral. If such collateral *** is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest." (810 ILCS 5/9—305 (West 1992).) Here, the language of the security agreement unambiguously expresses the intent of the parties to create a security interest in the deposit account. The pledgor then executed the security agreement and deposited $44,691.29 at North Bank. The bank was notified of the transaction and acknowledged notice in writing on May 21, 1993.

■ The existence of a perfected security interest in an account turns upon whether the bank has possession under the UCC. No pledge is created if the pledgor or his agent retains possession of the collateral. Official comment 2 of section 9—305 states: "Possession may be by the secured party himself or by an agent on his behalf: it is of course clear, however, that the debtor or a person controlled by him cannot qualify

as such an agent for the secured party." 810 ILCS Ann. 5/9—305, Uniform Commercial Code Comment 2 (Smith-Hurd 1993).

Edibles argues that the pledgor's ability to exercise control over the bailee through the joint signature requirement defeats the secured party's claims of possession. Edibles contends that by remaining a signatory on the account, the pledgor retained "an aspect" of control in the funds which is prohibited by comment 2 of the UCC. We disagree.

■ The point of requiring possession of collateral in the secured party is to provide notice to prospective third-party creditors that the pledgor no longer has unfettered use of the collateral. (See *Ingersoll-Rand Financial Corp. v. Nunley* (4th Cir. 1982), 671 F.2d 842, 844-45.) Although never defined, "possession" is used in article 9 to establish a filing scheme and allow perfection by means other than filing, such as possession in the third party. Under pre-Code law, a security interest was invalid if the debtor retained control of the collateral. That control could perpetrate fraud on potential creditors who, unaware of another creditor's security interest, would assume the collateral belonged to the debtor. See *Benedict v. Ratner* (1925), 268 U.S. 353, 69 L. Ed. 991, 45 S. Ct. 566.

The security agreement in this case gave adequate notice to creditors that the pledgor no longer had unfettered control of the funds. The bank took possession of the funds and agreed to hold them for the benefit of the secured party. If the pledgor wanted to withdraw funds from the account, consent and the signature of the secured party were required.

■ The security agreement also provided that if default occurred, the obligation would become due and the secured party would have the rights of a secured party under the UCC to pay the obligation "without presentment or demand or any notice to pledgor." The bank agreed to this provision. The security agreement satisfies the notice and possession requirements and complies with the provisions of section 305.

We find that the trial court erred when it ruled that the security agreement Faucher and Siepker introduced in evidence at the hearing did not establish a validly perfected security interest in the deposit account. The holder of a perfected security interest takes priority over the interests of unsecured creditors. (See 810 ILCS 5/9—312(5) (West 1992).) We reverse the trial court's order requiring the bank to turn over the deposit account to Edibles.

Reversed.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.