In re MYCRO–TEK, INC., Debtor.

Lynn D. ALLISON, Trustee, Plaintiff,

v.

GATE ELECTRONICS, INC., Defendant.

Union Bank, f/d/b/a California First Bank, Garnishee.

Bankruptcy No. 93–10302.
Adv. No. 94–5132.

United States Bankruptcy Court, D. Kansas.

Jan. 11, 1996.

J. Michael Morris, Wichita, KS, for Plaintiff Trustee.

Robert E. Nugent, Morris, Laing, Evans, Brock & Kennedy, Wichita, KS, for Defendant Garnishee.

### MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes on for consideration of the plaintiff Trustee's motion for judgment against defendant garnishee Union Bank, f/d/b/a California First Bank. The Trustee ap-

190

pears by counsel J. Michael Morris. The defendant garnishee appears by counsel Robert E. Nugent. In its answer, the Bank asserted an intervening claim or alternatively a right of setoff in the funds. The parties have submitted this matter on stipulations and memoranda of law and the matter is now ready for decision.

### FINDINGS OF FACT

The parties have stipulated to the following facts:

1. By order filed August 8, 1994, the Trustee obtained a default judgment in Adversary No. 94–5132 against Gate Electronics, Inc. ("Gate") in the amount of $18,787.11, plus costs of $120.00 and post-judgment interest at the federal judgment interest rate.

2. On April 6, 1995, the Clerk issued a Writ of Garnishment to Garnishee Union Bank (the "Bank") in the amount of $28,-360.66 (representing 1–½ times the amount of the judgment, costs and interest to that date, pursuant to K.S.A. 60–726).

3. The Writ was mailed on April 11, 1995, by first class mail addressed to "President, Union Bank, 17951 MacArthur Blvd., Irvine, California 92714."

4. On April 28, 1995, the Bank not having filed an Answer, the Trustee served a Motion for Judgment against Garnishee. Such motion was filed May 1, 1995.

5. On or about May 5, 1995, the Bank filed its: (1) Special Appearance Without Waiver of Service of Process; (2) Objection to Trustee's Motion for Default Judgment; and (3) Motion for Leave to File Answer Out of Time.

6. The Trustee agreed to allow the Bank to file an Answer out of time and on or about May 12, 1995, the Bank filed its Special Appearance and Answer of Garnishee, indicating that as of May 5, 1995, it held $318.36.

7. On May 15, 1995, the Trustee filed his Reply to Special Appearance and Answer of Garnishee.

8. Union Bank asserts that it maintains a valid and perfected security interest in the depository accounts of judgment debtor Gate Electronics, Inc. pursuant to its loan documents and Cal.Com.Code § 9302(1)(g).

In addition, the parties stipulated that certain documents should be included in the record, to wit: the Writ of Garnishment; the Motion for Judgment against Garnishee; the Bank's Special Appearance without Waiver of Service of Process; the Bank's Objection to Trustee's Motion for Default Judgment; the Bank's Motion for Leave to File Answer Out of Time; the Bank's Special Appearance and Answer of Garnishee; Trustee's Reply to Special Appearance and Answer of Garnishee; and copies of bank statements and other records showing the account balances of Gate at the Bank for April, May and part of June, 1995.

The Court has reviewed these documents and finds as follows:

1. On or about February 19, 1987, Gate and the Bank executed a security agreement that granted to the Bank a security interest in a variety of types of personal property, including equipment, inventory, and "demand accounts." This security agreement secured Gate's obligation to the Bank on a note. The only note submitted on stipulation is one dated January 31, 1994 in the amount of $475,492.43. The record does not reflect the amount of Gate's debt to the Bank secured by the security agreement on the date the writ of garnishment was served.

2. The Bank admits receiving the writ of garnishment by first class mail on April 17, 1995. The writ of garnishment ordered the Bank to file an answer stating whether the Bank is indebted to Gate or whether it has any of Gate's property in its possession. The writ further ordered the Bank to withhold the payment of any indebtedness or the delivery of any of Gate's property until further order of the Court.

3. On April 17, 1995 there was $18,952.66 on deposit in Gate's demand account at the Bank. From April 17 to May 5, 1995, when the Bank answered the garnishment, Gate had deposited a total of $25,453.54 in the account. But by May 5, the Bank had honored $44,434.88 in checks and withdrawals such that the bank statement showed a negative balance of $28.68 on May 5.

*CONCLUSIONS OF LAW*

## I. JURISDICTION

The Bank's threshold contention is that the Court lacks personal jurisdiction over the Bank because the Trustee failed to properly serve the Writ of Garnishment. The Bank argues that proper service is governed by California law. The Bank cites Cal.Civ.Proc. Code § 684.110 and argues that a writ of levy or garnishment served upon a financial institution must be served at the office or branch at which the deposit account is carried and be served on the officer, manager, or other person in charge of such office or branch. The Writ of Garnishment was not served on the branch at which Gate's account was carried, and service was effected by mail. The Bank also cites Cal.Civ.Proc.Code §§ 413.10, 415.10 and 415.20, and argues that those sections require personal service or substituted service, unless such service cannot be made upon reasonable diligence, and provide that service by mail is only complete upon receipt by the serving party of a written acknowledgment of receipt.

The Bank further argues that even if Kansas law governs the manner of service, the Trustee failed to properly serve the Bank. The Bank cites *Land Mfg., Inc. v. Highland Park State Bank*, 205 Kan. 526, 470 P.2d 782 (1970), where the Kansas Supreme Court held that a Kansas court could not attach or garnish property outside of the state, even though the court has personal jurisdiction over the garnishee. "In the case of foreign attachment or garnishment proceedings against a nonresident defendant, the existence of property within the jurisdiction of the court is essential." *Id.* at 529, 470 P.2d 782 (quoting 6 Am.Jur.2d *Attachment and Garnishment* § 19, p. 574).

Service on the Bank was effected in accordance with Fed.R.Bankr.P. 7069, which incorporates Fed.R.Civ.P. 69, which states in pertinent part as follows:

(a) In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

The Court agrees with the court's analysis in *In re American Freight System, Inc.*, 173 B.R. 739, 742–43 (Bankr.D.Kan.1994) [J. Pusateri], that this rule requires garnishments issued by a bankruptcy court in Kansas to be served in accordance with the law of Kansas, unless there is a specific federal rule controlling the manner of service of process. Rule 7004 is such a specific federal rule, and thus supersedes the Kansas procedure for service of process. Fed.R.Bankr.P. 7004(d) provides for nationwide service of process of summons, complaints or any other process except a subpoena. Fed.R.Bankr.P. 7004(b)(3) provides that service may be made by first class mail, postage prepaid, upon a domestic or foreign corporation, by mailing a copy of the summons, complaint or process to the attention of an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service. The Trustee complied with this section of Rule 7004.

Rule 7004 was amended by the Bankruptcy Reform Act of 1994 (the "Act"), to provide a more precise method of service on insured depository institutions. The Act added Rule 7004(h) to the Federal Rules of Bankruptcy Procedure. Rule 7004(h) requires that:

Service on an insured depository institution (as defined in section 3 of the Federal Deposit Insurance Act) in a contested matter or adversary proceeding shall be made by certified mail addressed to an officer of the institution unless—

(1) the institution has appeared by its attorney, in which case the attorney shall be served by first-class mail;

(2) the court orders otherwise after service upon the institution by certified mail of notice of an application to permit service on the institution by first-class mail sent to an officer of the institution designated by the institution; or

(3) the institution has waived in writing its entitlement to service by certified

mail by designating an officer to receive service.

The Trustee argues that the amendment did not apply to the instant adversary proceeding, because it was filed in early 1994, before the Act was enacted on October 22, 1994. The Bank counters that the Act was effective on April 11, 1995, when the trustee mailed the Writ of Garnishment. Rule 7004(h) was added by Section 114 of the Act. Section 702 of the Act provides that:

(a) Effective date.—Except as provided in subsection (b), this Act shall take effect on the date of the enactment of this Act.

(b) Application of Amendments.—(1) Except as provided in paragraph (2), the amendments made by this Act *shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act* ...

(2)(A) Paragraph (1) shall not apply with respect to the amendment made by section 111.

(B) The amendments made by sections 113 and 117 shall apply with respect to cases commenced under title 11 of the United States Code before, on, and after the date of the enactment of this Act.

(C) Section 1110 of title 11, United States Code, as amended by section 201 of this Act, shall apply with respect to any lease, as defined in such section 1110(c) as so amended, entered in to in connection with a settlement of any proceeding in any case pending under title 11 of the United States Code on the date of the enactment of this Act.

(D) The amendments made by section 305 shall apply only to agreements entered into after the date of enactment of this Act.

Bankruptcy Reform Act § 702, Pub.L.No. 103–304 (emphasis added).

■ Like most of the provisions in the new law, Rule 7004(h) is effective in all cases commenced after the date of the enactment of the Act, October 22, 1994. This adversary proceeding was commenced in early 1994.

The garnishment was initiated in 1995, after the amendment. The trustee argues that the garnishment is an auxiliary or ancillary proceeding within the adversary, not a separate action that could be deemed to have commenced after the effective date of the new Act, as the Bank argues. Although the garnishment is in many respects a lawsuit within a lawsuit, it is quintessentially a means to enforce and collect on a judgment in the adversary. This adversary was filed long before the effective date of the amendments, and therefore all matters of service in this adversary should be governed by the rules in effect at the time the adversary was filed. Under those rules, the Trustee properly served process on the Bank such that this Court has personal jurisdiction over the Bank.

## II. BANK LIABILITY FOR GARNISHED FUNDS

After the Bank was served with the writ of garnishment on April 17, 1995, it continued to honor checks drawn on the account, depleting the $18,952.66 in the account on April 17, as well as funds deposited subsequently. After the writ was served, from April 17, 1995 to May 5, 1995, Gate deposited $25,-453.54 into the account. The Bank honored $44,434.88 in checks and/or withdrawals from April 17 to May 5, such that on May 5, 1995, there was a negative balance of $28.68.[1] The Bank does not claim that any of the funds went to satisfy Gate's debt to the Bank. Rather, Gate used the funds to pay other creditors or obligees.

■ The Bank and the Trustee agree that the Bank had a perfected security interest in the deposit account. On or about February 19, 1987, the Bank had entered into a security agreement with Gate that granted it a security interest in equipment, inventory, demand accounts, as well as a number of other types of personal property. California is among four states that include "deposit accounts" in the types of property covered by Article 9 security interests. Cal. Com.Code § 9104. Illinois, Louisiana and

---

**1.** In its Answer and Amended Answer, the Bank claims that the account balance was $318.36 on May 5, but the bank account records submitted by stipulation indicate the account balance was −$28.68 on that date.

Hawaii also include consensual security interests in deposit accounts in Article 9.[2] All other states adopted the provision of the Uniform Commercial Code that excludes deposit accounts from the scope of Article 9. *See, e.g.,* K.S.A. 84–9–104(*l*). Gate's account at the Bank is a "deposit account" as defined in Cal.Com.Code § 9105(1)(e) as "a demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a negotiable certificate of deposit." A security interest in a deposit account is not a security interest in the funds in the account. When a customer deposits funds in its bank account, title to the funds passes to the depository institution. The depositor has a contractual right to withdraw funds, which is an intangible chose in action. The depository institution is the depositor's debtor, bound to honor the depositor's demands within the terms of their agreement. Thus, when the Bank took a security interest in Gate's bank account, it took an interest in Gate's contractual right to withdraw funds, not in the funds themselves.

■ A security interest in such a deposit account is perfected in one of two ways, depending on the identity of the secured creditor. If the secured creditor is also the depository institution, as is the Bank, the security interest is deemed perfected when the parties sign the security agreement. Cal.Com.Code § 9302(1)(g)(i). If the secured creditor is not the depository institution, the security interest is perfected when the creditor gives written notice to the depository institution. Cal.Com.Code § 9302(1)(g)(ii). Thus, the Bank's security interest in Gate's deposit account was perfected when the Bank and Gate entered into the security agreement.[3]

■ The Bank and the Trustee also agree that a perfected security interest prevails over the execution lien of a garnishing creditor. This general rule of priority applies to Article 9 security interests in deposit accounts. *See* Cal.Com.Code § 9301(1)(b) (preferring a lien creditor over an unperfected security interest but not over a perfected security interest); *see also Edibles Corp. v. West Ontario St. Ltd. Partnership,* 273 Ill. App.3d 550, 554, 210 Ill.Dec. 458, 461, 653 N.E.2d 45, 48 (1995) (perfected Article 9 security interest in deposit account takes priority over interests of unsecured creditors); *Grocery Supply Co. v. Winterton Food Stores, Inc.,* 655 So.2d 555 (La.Ct.App.1995) (reaching same conclusion in applying Louisiana law on Article 9 security interests in deposit accounts).

■ The Trustee argues, however, that the Bank waived its security interest when it honored Gate's demands for withdrawal, and should now be estopped from asserting its security interest. Certainly, unless otherwise provided in the Uniform Commercial Code, the principles of law and equity, including estoppel, supplement the provisions of the Uniform Commercial Code. *See* Cal. Com.Code § 1103. The issue here is whether the Bank could continue to honor checks and withdrawals after being served with the writ of garnishment, because of its status as a creditor with a perfected secured interest in the deposit account. The Trustee argues that the Bank was obliged to assert its security interest in the account, to prevail over the Trustee's garnishment; and that the Bank could not prefer other unsecured creditors over the execution lien of the Trustee. The Bank does not directly address this argument, but contends that an Article 9 security interest is not defeated simply because the debtor retains dominion and control over the collateral, citing Cal.Com.Code § 9205, which states in pertinent part that:

> A security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral (including returned or repossessed goods) or to collect or compromise accounts or chattel paper, or to accept the return of goods or

---

**2.** *See* Ill.Rev.Stat. ch. 26, ¶ 9–104; La.Rev.Stat. Ann. 10:9–104; and Haw.Rev.Stat. § 490–9–104.

**3.** The nature and scope of property interests are a matter of state law. The security interest at issue was created in California. Therefore, California law governs the creation, attachment, perfection, and priority of the Bank's security interest.

make repossessions, or to use, commingle or dispose of proceeds, or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral.

*See also Edibles Corp., supra,* (concluding that a security interest in a deposit account is not rendered invalid because a debtor retains an aspect of control of the collateral).

■ The Bank ignores, however, the fact that upon service of a writ of garnishment on an account in which it claims a security interest, it has a duty to honor the garnishment unless it deems its interest superior to that of the garnishor. Cal.Civ.Proc.Code § 701.040 requires:

(a) Except as otherwise ordered by the court upon a determination that the judgment creditor's lien has priority over the security interest, if property levied upon is subject to a security interest that attached prior to levy, the property or obligation is subject to enforcement of the security interest without regard to the levy unless the property is in the custody of the levying officer; but, if the execution lien has priority over the security interest, the secured party is liable to the judgment creditor for any proceeds received by the secured party from the property to the extent of the execution lien.

(b) After the security interest is satisfied, the secured party shall deliver any excess property, and pay any excess payments or proceeds of property, remaining in the possession of the secured party to the levying officer for the purposes of the levy, as provided in Sections 9502 and 9504 of the Commercial Code, unless otherwise ordered by the court or directed by the levying officer.

Upon levy, a creditor with a secured interest in the property levied upon must take some affirmative action based on its determination of the relative priorities of interests. If the creditor believes the execution lien has priority, it must honor the levy by tendering the property or its proceeds to the extent of the execution lien. If the creditor takes the position that its security interest primes the interest of the levying creditor, then it must enforce its security interest and after its interest is satisfied, it must remit any excess property or proceeds to the levying officer.

■ Here, the Bank did not enforce its security interest in any manner. Under the security agreement, issuance of any writ of attachment or execution, or other legal process against Gate or its property, constituted a default. Yet, the Bank never declared itself in default. It did not reduce its claim to judgment, commence foreclosure or use any other available judicial procedure to enforce its security interest, thus abstaining from any of its statutory remedies under Cal.Com.Code § 9501(1).[4] Nor did it post an administrative hold on the account pending a judicial determination of the relative rights of the parties. Instead, it continued to honor checks and withdrawals, which not only depleted the property subject to its security interest, it depleted property available for garnishment after satisfaction of its security interest.

The Bank was bound to recognize and honor the writ of garnishment. The fact that the Bank had a perfected security interest in the deposit account in no way affected the alienability of the debtor's rights in this collateral. As Cal.Com.Code § 9311 provides:

The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer but a provision in the security agreement making the transfer constitute a default is valid.

By disregarding the writ of garnishment, the Bank waived its security interest to the extent of the funds it allowed to be withdrawn. In effect, once the Bank allowed the funds to be withdrawn and disposed of, any security interest it had terminated, or alternatively,

---

**4.** There are no reported decisions discussing how the creditor enforces a security interest in a deposit account and there is no separate provision in the California Commercial Code concern-

ing enforcement of such a security interest. Therefore, the general methods of enforcement found in Cal.Com.Code § 9501 presumably apply.

was waived. Cal.Com.Code § 9306(2), states in pertinent part that:

... a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

In addition to its Article 9 security interest, the Bank had a common law right of setoff. The security agreement recognizes the right of setoff and provides that upon default the Bank:

shall have all rights provided in the California Uniform Commercial Code and otherwise available by law, ... may without notice or demand setoff and apply toward payment of any Obligations any and all demand, time, savings or any other deposit accounts, instruments, or other property under Bank's possession or control.

■ ■ ■ ■ ■

■ The Bank did not exercise its right of setoff either. It did not debit the account or otherwise take any affirmative action to setoff all or part of the account balance at or after it was served with the writ of garnishment. By its inaction, and by continuing to honor checks drawn on the account, the Bank also waived its right of setoff. In *Walters v. Bank of America Nat'l Trust & Savings Ass'n*, 9 Cal.2d 46, 69 P.2d 839, 840 (1937), a judgment debtor had a commercial bank account at the defendant bank, and owed the bank $50,000 on a note. At the time the writ of garnishment was served on the bank, the judgment debtor had $8086.16 on deposit in the bank. *Id.* After the bank was served with the writ of garnishment, it made an entry on its note to show a payment of $8086.16 on the note. *Id.* at 841. It then answered the writ by asserting its right of setoff. Thereafter, however, the bank proceeded to honor a number of checks and later recredited the account with the $8086.16, and reversed or debited the $8086.16 "payment" on the note. *Id.* The California Supreme Court affirmed a judgment holding the bank liable on the garnishment. The bank argued that it was immaterial that it continued to honor checks, so long as it demonstrated that it had a valid right of setoff at the time of the garnishment. *Id.* The court rejected this argument, holding that:

[W]here the garnishee claims a debt due from the debtor as an offset, it must in fact apply such debt on the amount due from it to the debtor. If, instead, it pay the amount to the debtor, such payment will be deemed an admission that there was no debt due and its claim of offset will be denied.... If the garnishee's subsequent conduct be inconsistent with its formal denial that it is possessed of credits belonging to the judgment debtor, and here it is indisputably so, the result is merely that it is held liable in accordance with such conduct. Its liability as a garnishee is clearly defined, and the rights of the attaching creditor may not be defeated by its arbitrary refusal to conform to its duties and obligations as such. Its liability is not determined by an agreement between itself and the judgment debtor as to the application of the fund, but by the law which defines its liability as such garnishee.

*Id.* at 843–44. The court quoted several other cases that discussed the rights and duties of a garnishee bank with a common law right of setoff. *See Id.* The court cites *First National Bank of Brantley v. Standard Chemical Co.*, 226 Ala. 509, 147 So. 682 (1932), as stating that:

On good reason it is held that if the garnishee holds a demand against the defendant at the time of service of garnishment, but, nevertheless, disregards same and pays the salary pending the garnishment as though he held no set-off, he cannot set it up against the plaintiff in garnishment. Otherwise, the demand is not made a shield of protection to the garnishee, but a weapon for the protection of the debtor against the subjection of his assets to the payment of his debts.

*Walters*, 69 P.2d at 844. The court reached a similar conclusion in *Prudential Loan & Trust Co. v. Metzler*, 66 Or. 224, 133 P. 1191 (1913), where the bank claimed a right of setoff but paid the funds to the judgment debtor, Metzler, and disregarded the writ of garnishment. The court concluded that:

The bank had the right to apply the funds in its hands at the time of the garnish-

ment, belonging to Metzler, to the payment of a debt due from the latter to it.... But it had no right to pay such funds to the order of Metzler during the garnishment proceedings and such payment was at the risk of the bank ... As between the attaching creditor and the judgment debtor the garnishee should occupy a disinterested position, and hold the money or property garnished until the matter is adjudicated or the attachment is discharged.... The bank waived the privilege of applying the funds upon Metzler's notes by paying him the same during the pendency of the garnishment proceedings. By so doing it clearly indicated that there was no intention on its part to do so....

*Id.* at 1193 (citations omitted). Kansas law similarly provides that a garnishee is not discharged "unless and until he or she applies the amount of his or her indebtedness to the defendant to the liquidation of his or her claim against the defendant." K.S.A. 60–719.

Whether the Bank was acting as a creditor with a perfected security interest or a creditor with a right of setoff, it waived its preferred status by failing to enforce its interest and it is liable to the garnishor for the amount of the garnishment, by virtue of arbitrarily and improperly preferring Gate and its unsecured creditors over the garnishment lien of the Trustee.

**IT IS THEREFORE ORDERED BY THE COURT** that the Trustee's motion for judgment is granted.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.