LAUREL MOTORS, INC., Plaintiff-Appellant, v. AIRWAYS TRANSPORTATION GROUP OF COMPANIES, INC., *et al.*, Defendants-Appellees.

Second District    No. 2—95—1475

Opinion filed October 16, 1996.

John M. Heaphy, George N. Vurdelja, Jr., and Griswald L. Ware, all of Vurdelja & Heaphy, of Chicago, for appellant.

Peter Ordower, of Law Offices of Peter Ordower, of Chicago, for appellee Airways Transportation Group of Companies, Inc.

Judith S. Sherwin and Mark J. Bereyso, both of Levenfeld, Eisenberg, Janger & Glassberg, of Chicago, for appellees Bryan Barrish, Brysson Care, Inc., and SIR Management, Inc.

Herbert L. Holzman, of Barinholtz, Holzman & Gault, of Chicago, for appellee Lawrence Wright.

James T. Rohlfing and Adam M. Kingsley, both of Saitlin, Patzik, Frank & Samotny, Ltd., of Chicago, for appellee Hedco Partnership and Peter Leeb.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Laurel Motors Inc., appeals for the second time from an order of the circuit court of Du Page County. In the first appeal, plaintiff challenged the circuit court's order directing it to assign and deliver certificates of origin for four automobiles to defendant, Bank One. We dismissed that appeal for lack of jurisdiction. Plaintiff next asked leave to file an interlocutory appeal from the entry of summary judgment in favor of Bank One. We denied that request for leave to appeal. Plaintiff now appeals an order granting summary judgment in favor of SIR Management, Inc., Brysson Care, Inc., Bryan Barrish, Peter Leeb, Hedco Partnership, and Lawrence Wright (lessees) on counts I, II, and VII of plaintiff's third amended complaint in replevin. We affirm.

Plaintiff is a corporation engaged in the sale of new automobiles. Between January 31, 1995, and March 16, 1995, Leased Car Sales (LCS) entered into an agreement with plaintiff to purchase four new automobiles for a total purchase price of $349,833, which automobiles are the subject of the present controversy.

Prior to January 1995, plaintiff and LCS had a previous relationship in which LCS had purchased between 50 and 150 luxury vehicles from plaintiff. LCS would contact plaintiff by telephone and order a specific make and model of vehicle. Plaintiff would locate a vehicle matching LCS' request and prepare the necessary documentation.

Plaintiff would then transfer possession of the vehicle to LCS, often allowing LCS several days to make the necessary payments. Plaintiff did not sign a security agreement with LCS. Plaintiff would, however, retain a certificate of origin for the vehicle until LCS' checks had cleared the bank.

The present controversy began when lessees approached LCS about leasing several luxury automobiles. LCS contacted plaintiff and ordered four automobiles. LCS then contacted Valet Auto Leasing (VAL), a company in the business of arranging leases for second-party financial institutions. LCS asked VAL to prepare a Bank One lease and other appropriate forms for the sale and lease of the subject vehicles.

VAL forwarded to Bank One a copy of the Bank One lease, a copy of the certificate of origin, and additional information it received from LCS. After Bank One approved the lessees' credit, it issued a check payable to VAL for the purchase of the subject vehicles.

After receiving payment from Bank One, VAL drafted and delivered checks payable to LCS for each of the subject vehicles. LCS was then responsible for tendering those monies to plaintiff for the subject vehicles.

In February and March 1995, plaintiff delivered possession of the subject vehicles to LCS and, in several cases, directly to Bank One's lessees. The vehicles actually delivered by plaintiff had the following vehicle identification numbers (VINs): (1) WDBFA76E4SF110048 (048); (2) WDBGA51E8SA234692 (692); (3) WDBEA66E3SC212531 (531); and (4) WDBGA43E2SA239071 (071). While there is some dispute regarding certain VINs, the parties agree that the above VINs accurately represent the vehicles actually in the possession of the lessees.

LCS tendered three checks for three of the above automobiles (VINs 048, 692, and 071). LCS did not tender payment on the remaining automobile (VIN 531). Plaintiff presented the checks submitted by LCS, but the checks were returned for insufficient funds. In the interim, LCS transferred the vehicles to Bank One for what appears to be a total purchase price of $294,000.

On April 7, 1995, plaintiff filed a complaint in replevin, seeking possession of the subject vehicles. The trial court entered a replevin order, and plaintiff began repossessing the vehicles. Bank One and the lessees, however, all filed a motion to intervene and a motion to dismiss the replevin action. On April 24, 1995, the trial court entered an order requiring plaintiff to return the vehicles that it had repossessed and ordered plaintiff not to take any action pursuant to the order of replevin until the matter proceeded to trial.

On May 19, 1995, plaintiff filed its third amended complaint in replevin. Count I was a claim for replevin against the lessees and Bank One. Count II sought a declaration that the lessees were not lessees in the ordinary course of business. Count VII sought damages from the lessees for their wrongful use of the automobiles. The remaining counts of the complaint did not involve the lessees.

Both of the lessees and Bank One each filed motions for summary judgment. The trial court granted the lessees' motion on September 7, 1995, finding that plaintiff had no security interest in the automobiles and that the cars were transferred to the lessees in the ordinary course of business. The trial court found that there was no just reason to delay enforcement or appeal of the order granting summary judgment as to counts I, II, and VII, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). This timely appeal followed.

■ On appeal, plaintiff contends the trial court erred in granting summary judgment as to counts I, II, and VII of its third amended complaint because genuine issues of material fact existed. Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. *Leschinski v. Forest City Steel Erectors*, 243 Ill. App. 3d 124, 127 (1993); 735 ILCS 5/2—1005(d) (West 1994). In ruling on the motion, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the respondent. *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 908 (1994).

The propriety of an order granting summary judgment is a question of law, and, as such, we review such orders *de novo*. *Pagano*, 257 Ill. App. 3d at 909. If, after reviewing the pleadings and evidentiary material before the trial court, the reviewing court determines that a material issue of fact exists or that the summary judgment was based on an erroneous interpretation of the law, then reversal is warranted. *Pagano*, 257 Ill. App. 3d at 909.

■ Plaintiff first argues that its retention of the certificates of origin for the automobiles is sufficient to create a security interest in the automobiles. Plaintiff reasons that a certificate of origin is a "document of title" under the Uniform Commercial Code (Code) (810 ILCS 5/9—105(f) (West 1994)). A document of title is a negotiable document, and a party can thus take and perfect a security interest by retaining such a negotiable document under section 9—305 of the Code. 810 ILCS 5/9—305 (West 1994).

Lessees counter that plaintiff failed to create a security interest by failing to comply with the requirements of article 9 of the Code. Moreover, lessees contend that plaintiff's reliance on section 9—305 of the Code is misplaced and premature because that section deals with perfecting a security interest and plaintiff failed to first address whether it had created a security interest.

■ To address the issue of whether plaintiff created a security interest in the automobiles by retaining the certificates of origin, we must look first to the Code. *Andrews v. Mid-America Bank & Trust Co.*, 152 Ill. App. 3d 139, 143 (1987) (creation of security interest in motor vehicle is solely governed by Code). In order to create a security interest in collateral, the collateral must be in the possession of the secured party or there must be a signed security agreement. 810 ILCS 5/9—203 (West 1994). It is undisputed that plaintiff never signed a security agreement with LCS or the lessees. Therefore, in order to create a security interest here, plaintiff must retain the collateral.

■ Plaintiff claims that the certificates of origin for the automobiles are the collateral. This contention is without merit. The automobiles themselves, and not the certificates, are the items of collateral. An examination of the purposes of the filing requirements confirms this conclusion.

The purpose of filing a financing statement is to put third parties on notice that the secured party has a security interest in the collateral. *Signal Capital Corp. v. Lake Shore National Bank*, 273 Ill. App. 3d 761, 771 (1995). Similarly, possession of the collateral also puts third parties on notice that the possessor may have an interest in the collateral. *Edibles Corp. v. West Ontario Street Ltd. Partnership*, 273 Ill. App. 3d 550, 554 (1995).

Here, plaintiff's retention of the certificates of origin fails to notify any third parties of plaintiff's claimed security interests. Only a dealer receives a certificate of origin for an automobile. If a purchaser of the automobile is not a dealer, then the dealer sends the certificate of origin directly to the Secretary of State for processing. Thus, a nondealer purchaser would never even see a certificate of origin in any event. Therefore, plaintiff's retention of the certificates of origin would fail to notify third parties purchasing cars from LCS that plaintiff had claimed a security interest in the automobile. This is especially true in the case of a lessee, who would not even receive the title to the vehicle. Plaintiff's retention of the certificates of origin of the automobiles is therefore ineffective to create a security interest.

Plaintiff seeks to avoid the effect of article 9 by claiming a security interest was created pursuant to section 2—507 of the Code, which states in pertinent part "[w]here payment is due and demanded on the delivery to the buyer of goods *** , his right as against the seller to retain or dispose of them is conditional upon his making the payment due." 810 ILCS 5/2—507(2) (West 1994). Thus, because LCS did not immediately tender a check to plaintiff, plaintiff could exercise its right of reclamation. Plaintiff would then turn to the priority rules to determine whether its interest in the automobiles was superior to Bank One's interest.

Lessees respond first by pointing out that plaintiff raises this argument for the first time on appeal. Additionally, lessees contend it was undisputed that payment for the automobiles was neither due nor demanded upon delivery, but several days later. Hence the transfer and payment conformed to the parties' expectations, and section 2—507 is not properly invoked for these transactions.

■ Where a party raises an issue for the first time on appeal, we need not consider it. *Randle v. Hinckley Parachute Center, Inc.*, 141 Ill. App. 3d 660, 663 (1986). Plaintiff did not raise its section 2—507 argument before the trial court in its memorandum in opposition to the motion for summary judgment or elsewhere, and, therefore, we do not consider it. We note, however, that plaintiff's argument is nevertheless unavailing.

While the plaintiff's purchase order form contains the notation "unpaid cash balance due on delivery," the form also states "if this is a credit sale" and the appropriate forms have not been provided to the purchaser, then "this [purchase] order is not binding and either party may cancel." Moreover, the form does not provide any indication of whether the transaction is to be cash or credit. The binding effect of the "due on delivery" language is therefore questionable. Equally important, the form does not prohibit oral modifications or waivers of the agreement. It is undisputed that LCS was not required to tender payment on delivery of an automobile. As payment was never "due and demanded on the delivery," the provisions of section 2—507 do not apply. Thus, plaintiff did not create a security interest pursuant to article 2.

■ Finally, plaintiff argues that it intended to retain ownership of the vehicles by retaining the certificates of origin pending clearance of the checks LCS tendered. It is clear, however, that plaintiff knew that LCS would resell the subject vehicles. Thus, plaintiff could not have intended to retain ownership of the vehicles in light of its knowledge that, upon their transfer, the vehicles would have been resold to third parties.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and DOYLE, JJ., concur.