# Illinois Official Reports

## Appellate Court

---

*Malek v. Gold Coast Exotic Imports, LLC*, 2018 IL App (1st) 171459

---

| | |
|---|---|
| Appellate Court Caption | NANCY R. MALEK, Plaintiff-Appellee, v. GOLD COAST EXOTIC IMPORTS, LLC, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-17-1459 |
| Filed | June 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-50794; the Hon. Ann Collins-Dole, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Ira M. Levin, Susan M. Horner, Nora E. Flaherty, and Blake A. Roter, of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellant.<br><br>Fred R. Harbecke, of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Presiding Justice Cobbs and Justice Fitzgerald Smith concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises out of a replevin action, seeking to recover a 2012 BMW 650i automobile. Pursuant to an alleged verbal agreement, the former owner of the BMW, Michel Malek, M.D., transferred possession of the vehicle to Gold Coast Exotic Imports, LLC (Gold Coast), in order to satisfy a debt. At the time that the BMW was transferred to Gold Coast, Michel and plaintiff Nancy Malek were in the midst of a divorce action pending in Cook County.

¶ 2    After Gold Coast obtained possession of the BMW, Nancy filed a motion to assign and transfer title to the vehicle from Michel to her. The divorce court granted Nancy's motion but ordered that she take the BMW subject to any liens on the vehicle. Nancy subsequently sought possession of the BMW from Gold Coast. Gold Coast refused Nancy's demand, claiming it was entitled to possession of the BMW pursuant to its agreement with Michel. Shortly thereafter, Nancy filed a replevin action against Gold Coast in the trial court. Following a bench trial on the matter, the trial court held that Nancy was entitled to the BMW because Gold Coast never recorded its lien on the vehicle.

¶ 3    Gold Coast now appeals from that judgment. Specifically, Gold Coast asserts that it had a perfected security interest in the form of a possessory lien on the BMW pursuant to section 9-313(a) of the Uniform Commercial Code (UCC) (810 ILCS 5/9-313(a) (West 2016)), which preceded Nancy's interest in the vehicle, thus defeating her replevin action. We agree and therefore reverse the trial court's judgment for the reasons set forth below.

¶ 4                                BACKGROUND

¶ 5    On August 3, 2013, Gold Coast delivered the BMW to Michel for an agreed upon value of $88,451.81. At that time, Michel did not pay Gold Coast for the vehicle in full, but paid only $6551.20, which represented the sales tax and license and title fees for the vehicle. Title to the BMW was issued in Michel's name only. This transaction was pursuant to a verbal agreement between Michel and Gold Coast, involving multiple vehicles from prior transactions between the parties, which resulted in a credit to Michel that was applied towards the BMW. As part of their agreement, Michel owed Gold Coast a remaining balance of $33,294.18. Michel would either repay that balance or, alternatively, return the BMW to Gold Coast to be sold as satisfaction of his debt.

¶ 6    Some two years later, in September 2015, Michel's balance remained unpaid. Consequently, pursuant to his agreement with Gold Coast, Michel shipped the BMW back to Gold Coast from California, where the vehicle was being used by the couple's son at college. On October 5, 2015, the BMW arrived at Gold Coast. At that time, Michel and Nancy were in the midst of a divorce action, which was pending in the circuit court of Cook County (14-D-4449).

¶ 7    On October 29, 2015, Nancy filed an emergency motion in the divorce action, to immediately assign and transfer title of the BMW from Michel to her. The motion was denied and shortly thereafter, on November 3, 2015, Nancy filed a second emergency motion to immediately assign and transfer title of the BMW. In support, she filed an affidavit attesting that she had visited Gold Coast and was informed that the BMW would be sold. According to Gold Coast, it never received notice of her emergency motions.

¶ 8       On November 3, 2015, the divorce court granted Nancy's second motion and entered an order requiring that title to the BMW be transferred from Michel to Nancy and that Nancy take the vehicle subject to any liens as of that date. Subsequently, Nancy sent a letter as well as a copy of the title transfer order to Gold Coast and its owner, Joseph Perillo, demanding immediate possession of the BMW.

¶ 9       Gold Coast refused and sent a letter to Nancy, stating the terms of its agreement with Michel and claimed that the BMW was in its possession because Michel failed to satisfy his $33,294.18 debt pursuant to their agreement.

¶ 10      Shortly thereafter, Nancy filed an action in replevin against Gold Coast in the trial court (15-L-50794) pursuant to section 19-101 of the Code of Civil Procedure (Code) (735 ILCS 5/19-101 (West 2016)). On June 21, 2016, the trial court entered an order requiring Gold Coast to transfer possession of the BMW to Nancy upon the presentation of a replevin bond. Nancy subsequently obtained a replevin bond and possession of the BMW from Gold Coast. Nancy then sold the BMW to Steve Foley Cadillac, Incorporated, for $36,500.

¶ 11      In February 2017, the trial court held a bench trial on Nancy's replevin action. Nancy filed a motion *in limine* to exclude certain testimony relating to the verbal agreement between Michel and Gold Coast, arguing that it was hearsay because Michel was unavailable to testify at trial. The trial court denied her motion and heard testimony from Nancy and Joseph Perillo, reflecting the above-stated facts. At trial, Gold Coast argued that the November 3, 2015, title transfer order was void because Gold Coast was never served a copy of the motion. In response, Nancy claimed that Gold Coast was never served a copy of the motion because she was unaware of Gold Coast's security interest in the BMW prior to filing the replevin action since there were no liens recorded on the vehicle.

¶ 12      On May 12, 2017, the trial court issued an order of replevin in favor of Nancy and entered judgment against Gold Coast for the amount of the BMW. The court also ordered that the proceeds from the sale of the BMW be tendered to Nancy and stated that the order was final and appealable. Gold Coast now appeals that judgment.

¶ 13                                    ANALYSIS

¶ 14      On appeal, Gold Coast challenges the trial court's judgment issuing an order of replevin, finding that Nancy was entitled to immediate possession of the BMW. Gold Coast asserts that the court, in finding that Nancy was entitled to immediate possession of the BMW, misapplied the UCC because it failed to recognize Gold Coast's prior security interest in the form of a perfected possessory lien. Gold Coast asserts that its rights to the vehicle were, therefore, superior to Nancy's subsequent rights obtained in the title transfer order. Gold Coast thus contends that Nancy cannot succeed in the replevin action because she was not entitled to possession of the BMW. Because the action of replevin is a strictly statutory proceeding, our review of the trial court's judgment is *de novo*. *Gunn v. Sobucki*, 216 Ill. 2d 602, 609 (2005); *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1072 (2007).

¶ 15      The primary purpose of replevin is to determine the right to possession of property, not title. *General Motors Acceptance Corp.*, 374 Ill. App. 3d at 1072. Section 19-101 of the Code states in relevant part:

        "Whenever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for

the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 ILCS 5/19-101 (West 2016).

¶ 16    As stated, the trial court found that Nancy was a person entitled to possession of the BMW, and therefore, able to recover the chattel via replevin. Gold Coast contends, nonetheless, that Nancy was not entitled to possession of the BMW. Gold Coast asserts that Nancy's rights to the BMW were subject to its prior security interest in the form of a perfected possessory lien. Gold Coast asserts that when it took possession of the BMW from Michel, its security interest attached to the vehicle in the form of a lien and became perfected. Nancy, on the other hand, asserts that Gold Coast's security interest was not perfected because Gold Coast never *recorded* its lien as it was never filed with the Illinois Secretary of State.

¶ 17    To address the issue of whether Gold Coast perfected its interest by possession, we must first determine whether a valid security interest was created from the agreement between Michel and Gold Coast. Article 9 of the UCC (810 ILCS 5/9-109(a)(1) (West 2016)) applies to any transaction, regardless of its form, that intends to create a security interest in personal property. *General Motors Acceptance Corp.*, 374 Ill. App. 3d at 1073. A security interest is the secured party's rights in the collateral held by the debtor. *Andrews v. Mid-America Bank & Trust Co.*, 152 Ill. App. 3d 139, 143 (1987). The creation of a security interest in vehicles that require a certificate of title is solely governed by article 9 of the UCC. *Id.*; *Laurel Motors, Inc. v. Airways Transportation Group of Cos.*, 284 Ill. App. 3d 312, 316 (1996).

¶ 18    As a threshold matter, however, Nancy incorrectly asserts that Gold Coast, in order to perfect its security interest, was required to record its lien on the BMW's certificate of title and file it with the Secretary of State pursuant to article II of Chapter 3 of the Illinois Vehicle Code (625 ILCS 5/3-202 (West 2016)), governing security interests under certificates of title and registration of vehicles. It is true that certain transactions that create security interests otherwise governed by article 9 may, instead, be controlled by other applicable consumer laws or statutes, including article II of Chapter 3 of the Vehicle Code. 810 ILCS 5/9-201(b)(3) (West 2016). Article II, however, does not apply to certain "excepted" liens and security interests. 625 ILCS 5/3-201 (West 2016). Specifically, section 3-201(c) plainly states that article II *does not* apply to or affect "[a] security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale." *Id.* § 3-201(c). As set forth in more detail below, article II does not apply here because Gold Coast's security interest in the BMW was created when Gold Coast, as an automobile dealer, sold the vehicle to Michel pursuant to their agreement. Accordingly, we will proceed under article 9 of the UCC.

¶ 19    Under section 9-203(b) of the UCC, a security interest is created if (1) value has been given, (2) the debtor has rights in the collateral or the power to transfer such rights to a secured party, and (3) the debtor and the secured party have agreed that a security interest shall attach to the collateral. 810 ILCS 5/9-203(b) (West 2016).

¶ 20    Applying the above-stated factors to this case, we conclude that the agreement between Michel and Gold Coast created a valid security interest. First, value was given because Gold Coast delivered the BMW to Michel for $33,294.18. Second, Michel had rights in the BMW because Gold Coast transferred title and possession of the vehicle to him. Third, Michel and Gold Coast agreed that Gold Coast's security interest would attach to the BMW if Michel failed to satisfy his debt. Michel did not pay the balance owed, and in satisfaction of his debt, he instead returned the vehicle to Gold Coast pursuant to their agreement.

¶ 21   With regard to the third requirement, typically the parties' agreement that a security interest attaches to the collateral is evidenced by a written, authenticated security agreement.[1] *Id.* § 9-203(b)(3)(B); *Andrews*, 152 Ill. App. 3d at 143. A secured party may then perfect its security interest by filing a financing statement with the Secretary of State, and this places third parties on notice of that party's interest in the collateral. 810 ILCS 5/9-310(a) (West 2016); *Laurel Motors, Inc.*, 284 Ill. App. 3d at 317. However, the parties' agreement that a security interest attaches to the collateral may also be evidenced by the secured party's actual possession of the collateral, and such possession likewise operates to put third parties on notice of the secured party's interest in the collateral.[2] *Laurel Motors, Inc.*, 284 Ill. App. 3d at 317; *Edibles Corp. v. West Ontario Street Ltd. Partnership*, 273 Ill. App. 3d 550, 554 (1995); 810 ILCS 5/9-310(b)(6) (West 2016).

¶ 22   Here, Michel and Gold Coast did not have a written security agreement, but Gold Coast satisfied the third factor under section 9-203(b) by taking possession of the BMW. Gold Coast perfected its security interest, even absent a Secretary of State filing, simply by taking possession of the BMW. Likewise, Gold Coast put Nancy on notice of its security interest in the absence of a filed financing statement by taking possession of the BMW because Michel no longer retained the vehicle. In her brief, Nancy concedes that she had notice of Gold Coast's security interest in the vehicle because "[k]nowing that the BMW was at Gold Coast, she asked for it to be turned over." In fact, in her emergency motion, Nancy pleaded such notice of Gold Coast's possession of the BMW as the basis for seeking the title transfer order. Thus, by taking possession of the BMW, Gold Coast perfected its security interest and put Nancy on notice of its interest in the vehicle.

¶ 23   Finally, Gold Coast contends that Nancy's rights in the BMW were subject to Gold Coast's prior superior interest in the form of a perfected possessory lien. We agree.

¶ 24   A lien arises when a secured party's interest attaches to the collateral. 810 ILCS 5/9-203(g), 9-333 (West 2016). Under section 9-203(a) of the UCC, a security interest attaches to the collateral and becomes enforceable against the debtor and third parties with respect to the collateral once the three factors under section 9-203(b) stated above are satisfied. *Id.* § 9-203. Here, a lien arose on the BMW. As established, Gold Coast satisfied all three factors under section 9-203(b). Thus, Gold Coast's security interest attached to the BMW and became enforceable against Michel as well as other third parties, including Nancy, on October 5, 2015.

¶ 25   Under section 9-202 of the UCC, the debtor's title to the collateral is immaterial with respect to the secured party's rights in the collateral under article 9. *Id.* § 9-202. Section 9-404(a)(1) of the UCC provides that an assignee's rights in the collateral are subject to the terms of the agreement between the debtor and the secured party as well as any defense or claim arising from the agreement. *Id.* § 9-404(a)(1). Here, Nancy's title to the BMW was

---

[1]Section 9-102(a)(74) of the UCC defines a "security agreement" as "an agreement that creates or provides for a security interest." 810 ILCS 5/9-102(a)(74) (West 2016). Furthermore, official comment 3(b) under section 9-102, states that the term "security agreement," which was formerly used in the colloquial sense under article 9, referring to a document or writing that contained the debtor's security agreement, has since been eliminated under 9-102. U.C.C. § 9-102, cmt. 3(b) (Am. Law Inst. 2010).

[2]We note that section 9-313(b) of the UCC, governing possession of goods covered by certificate of title does not apply here because, as established, article II of Chapter 3 of the Vehicle Code does not apply to Gold Coast's security interest in this matter.

immaterial because, as stated, Gold Coast had a prior superior interest in the vehicle in the form of a perfected possessory lien. Thus, because Nancy's title transfer order assigned Michel's rights in the BMW to Nancy, her rights were subject to the terms of the agreement between Michel and Gold Coast, including Gold Coast's superior claim to possession of the vehicle in the form of a perfected possessory lien. As previously stated, pursuant to the title transfer order, Nancy's rights in the BMW were subject to any liens on the vehicle as of November 3, 2015, and subject to Gold Coast's earlier lien of October 5, 2015.

¶ 26    Based on the foregoing, Nancy's replevin action fails because she was not entitled to possession of the BMW. To prevail in replevin, a plaintiff must be entitled to immediate possession of the property; thus, in turn, replevin is defeated when a plaintiff has no right to possession of the property. *General Motors Acceptance Corp.*, 374 Ill. App. 3d at 1072.

¶ 27    It should also be noted that Nancy's assertion that the trial court improperly admitted certain hearsay testimony from Joseph Perillo regarding Gold Coast's agreement with Michel is without merit, and Illinois law is well-settled to the contrary. "[T]he prohibition against hearsay does not preclude relevant testimony as to what the contracting parties said with respect to the making or the terms of an oral agreement." *Werner v. Botti, Marinaccio & DeSalvo*, 205 Ill. App. 3d 673, 678 (1990). In *Werner*, the trial court properly admitted the plaintiff's testimony over hearsay objections because the testimony consisted primarily of matters that were discussed between him and the other party to the agreement, who was unavailable as a witness during the trial. *Id.* at 679 (stating that "[t]he law is well established that where, as here, a declarant himself testifies as to prior out-of-court declarations he has made, and is therefore present in court and subject to cross-examination, the basis for excluding hearsay is removed, and no hearsay objection is appropriate").

¶ 28    Furthermore, we disagree with Nancy's assertion that Gold Coast is precluded from presenting evidence of its lien because it failed to raise the existence of its lien as an affirmative defense. Nancy relies on section 2-613(d) of the Code, which states that a defendant must set forth any ground or defense in its answer or reply if such ground or defense would be likely to take the plaintiff by surprise. 735 ILCS 5/2-613(d) (West 2016).

¶ 29    Here, Gold Coast was not required to raise its lien as an affirmative defense because Nancy was aware of Gold Coast's interest in the BMW; thus, Gold Coast's assertion of its lien on the vehicle could only come as no surprise to Nancy. Nonetheless, in its answer to Nancy's complaint in replevin, Gold Coast denied that Nancy was the owner of the BMW and also denied that the vehicle was wrongfully detained by Gold Coast. Gold Coast, in denying Nancy's right to possess the BMW, adequately asserted that possession of the vehicle was in dispute. We find that Gold Coast, therefore, sufficiently pleaded a defense to Nancy's replevin action because, as stated, replevin is an action involving one's right to possession of property. *Id.* § 19-101; *General Motors Acceptance Corp.*, 374 Ill. App. 3d at 1072.

¶ 30                                   CONCLUSION

¶ 31    We conclude that Nancy was not entitled to possession of the BMW and, therefore, cannot succeed in replevin. Furthermore, because Nancy was not entitled to the BMW or its proceeds, judgment should be entered in favor of Gold Coast for the return of the proceeds from the sale of the BMW in the amount $33,294.18 to satisfy Michel's debt. See 735 ILCS 5/19-123 (West 2016) (stating, "[i]f the plaintiff in an action of replevin obtains an order for replevin and the right of property is adjudged against the plaintiff, judgment shall be entered for a return of the

property"). Accordingly, judgment should be entered in favor of Gold Coast in the amount of $33,294.18.

¶ 32     For the reasons stated, we reverse the trial court's order of replevin and judgment against Gold Coast for the value of the BMW and remand this cause to the trial court with instructions to enter judgment against Nancy for the value of the BMW.

¶ 33     Reversed and remanded.