2 September 1999

No.  2--98--0670 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

MILLEDGEVILLE COMMUNITY CREDIT ) Appeal from the Circuit Court

UNION,                         ) of Winnebago County.

                               )

Plaintiff-Appellee,       )

                               )

v.                             ) No. 97--LM--1783

                               )

ROBERT CORN,                   ) Honorable

                               ) Ronald L. Pirrello,

Defendant-Appellant.      ) Judge, Presiding.

JUSTICE GALASSO delivered the opinion of the court:

On December 12, l997, plaintiff, Milledgeville Community Credit Union, filed a verified complaint for replevin against defendant, Robert Corn, seeking a judgment for possession of a 1993 Chevrolet Z-28 Camaro (Camaro) "currently being wrongfully detained and held" by defendant.  After a bench trial, the trial court entered an order of replevin on January 29, l998.  Subsequently, plaintiff filed an amended complaint against defendant, seeking money damages for alleged damage to the Camaro.  Defendant then filed an answer to the complaint and a counterclaim, which sought reimbursement for upkeep and maintenance payments he made regarding the Camaro and the trade-in value of the car he traded in when purchasing the Camaro.  After a hearing, the trial court entered an order, which awarded plaintiff damages in the amount of $3,465.74. This timely appeal of both orders followed.

On appeal, defendant argues that the trial court erred in granting the subject order of replevin and that the order should be vacated by this court.  Defendant further contends that, once the order of replevin is vacated, the order for damages to the Camaro is without effect.  In response, plaintiff asserts that the order of replevin was properly entered.

The record reveals the following facts.  Plaintiff is a banking and financial institution.  On June 28, l995, plaintiff loaned Darren Miller $15,472 for the purchase of the Camaro.  The note was cosigned by Darren’s mother, Ellen Miller, and was secured by the Camaro.  Pursuant to section 3--202 of the Illinois Vehicle Code (625 ILCS 5/3--202
 (West 1996)), plaintiff perfected its security interest in the Camaro by delivering to the Illinois Secretary of State a certificate of title for the Camaro, which contained the name and address of the lienholder along with the required filing fee.

In June 1996, the Millers, in an attempt to sell the Camaro, placed it with Rick Johnson, owner of Johnson’s Car World in Rockford.  Early in July, defendant was in the market for an automobile and saw the ad for the Camaro placed by Johnson in the Rockford Register Star newspaper.  Defendant went to Johnson’s Car World to examine the Camaro.  He asked Johnson where he had gotten the Camaro, and Johnson told him that he had acquired the vehicle at an auction.  Defendant test-drove the Camaro and then talked with Johnson about purchasing it and trading in the vehicle he presently owned.  (It is unclear from the record whether the trade-

in vehicle was a 1968 or 1988 Chevrolet Camaro.)  Defendant did not have insurance for the vehicle, and the license plate stickers had expired, so Johnson had to come to defendant’s home to view the trade-in vehicle.

The contract for the purchase of the Camaro was signed by Johnson and defendant on July 5, l996.  The total purchase price including sales tax was $14,616, reduced to $9,616 by the trade-in amount of $5,000.  For the balance of the purchase price, defendant obtained a loan from Sycamore National Bank & Trust Company (Sycamore Bank), signing a note and security agreement on July 8, l998.  The check tendered by Sycamore Bank to Johnson’s Car World contained the language, "[E]ndorsement of the check guarantees the endorser will secure title to the vehicle from the Illinois Secretary of State and forward the title to the bank."

Defendant testified that, two months after he purchased the Camaro, he learned from the Secretary of State’s office that the Millers were the previous owners of the vehicle.  He also discovered at that time that plaintiff had a lien on the Camaro.

After the Camaro's purchase, Johnson’s Car World did not pay off the note in favor of plaintiff to obtain clear title.  Further, the Millers defaulted on their loan and failed to keep the vehicle properly insured.  At the time of the hearing on the complaint for replevin in January 1998, the Millers were approximately $1,200 in arrears on their note with plaintiff and owed about $9,000 on the balance of the note.

Shortly after defendant’s purchase of the Camaro in July 1996, plaintiff became aware that defendant had possession of it. When the Millers defaulted on their loan with plaintiff, the latter filed its verified complaint for replevin against defendant in December l997.  As noted above, after a hearing on January 23, l998, the trial court entered an order of replevin.  The trial court’s accompanying memorandum of decision read in pertinent part:

"I found [the case] extremely difficult and, like [plaintiff’s counsel] found the decision a difficult one particularly because there is the appearance of an injustice being done no matter which way I decide.

First, I will find that [defendant] was [a] buyer in the ordinary course of business.  He took without knowledge and appears to be a totally innocent victim of these circumstances.  However, that does not appear to end the analysis.  Under 810 ILCS 5/9--307, it is not Paragraph 1 which appears to control.  In the comments under Paragraph 3 there is a heading 'as to security interests which can be perfected only by filing under Section 9--302.'  This category includes all interests in motor vehicles.  It goes on to state that where motor vehicles are concerned in states having a certificate of title law, perfection will be under that law. It is stipulated in Paragraph 3 of the Verified Complaint for Replevin, that the Plaintiff has perfected its security interest pursuant to that law.  I have researched the statute and that appears to be correct.  Thus it would seem that the filing of the title with the Secretary of State fulfills the requirement in Subparagraph 2 of filing a financing statement which covers the goods in question.  An automobile appears to be 'consumer goods' for the purposes of this statute as defined in [section] 9--109(1). 

I am particularly troubled by this situation because of the apparent innocence of [defendant] who is a buyer in the ordinary course [of business], and therefore tried to evaluate the public policy considerations.  In doing so, I look to any wrongdoing or apparent wrongdoing on the part of either party. Plaintiff *** also appears to be entirely innocent of any wrongdoing.  They have loaned money and done precisely what the statute required in order to perfect their security interest in that. *** [T]he question becomes, should the law put the onus on the owner of the secured interest to follow the security interest and insure that it not be sold off improperly, or should the onus instead be placed on the purchaser of a vehicle to insure that he purchases clear title.  The latter task appears to be less onerous. Additionally, it is backed up by the time honored admonition to 'let the buyer beware.' "

Early in February l998, Kay Graumer, plaintiff’s chief executive officer, picked up the repossessed Camaro, which appeared to be in very poor condition.  She stated that the most obvious problem was that an oily substance had been spread around the Camaro’s interior, most notably on the front and back seats and the floor coverings.  Subsequently, Ms. Graumer had a mechanic inspect the Camaro and list those parts that were missing or damaged.  It was determined that among the Camaro’s missing parts were the antenna, the compact disc player, and the "silver aluminum" 16-inch wheels.  A number of the vehicle’s interior parts had to be replaced due to the oily substance deposited on them.  Plaintiff spent $7,077.86 to repair the vehicle and then filed an amended complaint, seeking damages from defendant for his alleged taking of certain parts of the Camaro and damaging much of its interior. After a hearing on March 16, l998, the trial court awarded plaintiff $3,465.74 in damages.

Initially, we note the standard of review to be applied in the instant case.  Where the facts are uncontroverted and the issue is the trial court’s application of the law to the facts, the reviewing court may determine the correctness of the ruling independently of the trial court’s judgment.  
In re Marriage of Bonneau
, 294 Ill. App. 3d 720, 723 (1998).  As a result, our review in this appeal is 
de
 
novo
.  
Bonneau
, 294 Ill. App. 3d at 723. Moreover, construction of a statute is a question of law that is independently determined by a reviewing court.  
Harris Bank v. Village of Mettawa
, 243 Ill. App. 3d 103, 113 (1993).

Article 9 of the Uniform Commercial Code (810 ILCS 5/9--101 through 9-9902 (West l996)) controls secured transactions such as the one involved in the instant litigation, which was made in favor of plaintiff.  Defendant argues the trial court erred in holding that section 9--307(2) (810 ILCS 5/9--307(2) (West 1996)) controlled the case.  Rather, defendant maintains that he was a buyer in the ordinary course of business and was entitled to the protections of section 9--307(1) (810 ILCS 5/9--307(1) (West 1996)).

After reviewing the statute, we do not agree with defendant that he was entitled to the protections of section 9--307(1), which reads:

"Except as provided in subsection (4), a buyer in the ordinary course of business, as defined in subsection (9) of Section 1--201, 
takes free of a security interest created by his seller
 even though the security interest is perfected and even though the buyer knows of its existence."  (Emphasis added.) 810 ILCS 5/9--307(1) (West 1996).

The term "seller" is defined as "Vendor; one who has contracted to sell property.  A person who sells or contracts to sell goods."  
Black’s Law Dictionary
 1360 (6th 
ed. 1990).  In this case, the Millers had placed the Camaro with Johnson’s Car World to sell the vehicle.  Johnson’s Car World then sold the Camaro.  Thus, defendant’s seller was Johnson’s Car World and not the Millers.  Moreover, Johnson’s Car World had created no security interest related to the Camaro.  As a result, we conclude that the protections set out in section 9-307(1) cannot apply to this defendant.

Section 9--307(2) reads:

"In the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods."  810 ILCS 5/9--307(2) (West 1996).

In construing said section, we are to give effect to the legislature’s intention.  
Pastor v. National Republic Bank of Chicago
, 56 Ill. App. 3d 421, 423 (1977).  In so doing, we may examine the pertinent "Uniform Commercial Code Comment" (Comment) in order to discern the legislature’s intent.  
Pastor
, 56 Ill. App. 3d at 423-24.  The Comment reads in relevant part:

"3. Subsection (2) deals with buyers of 'consumer goods' (defined in Section 9--109).  Under Section 9--301(1)(d) no filing is required to perfect a purchase money interest in consumer goods subject to this subsection except motor vehicles required to be registered: filing is required to perfect security interests in such goods other than purchase money interests ***.

Under subsection (2) a buyer of consumer goods takes free of a security interest even though perfected a) if he buys without knowledge of the security interest, b) for value, c) for his own personal, family, or household purposes and d) before a financing statement is filed.

***

As to security interests which can be perfected only by filing under section 9--302
 [emphasis in original]: This category includes all nonpurchase money interest, and 
all interests
, whether or not purchase money, 
in motor vehicles
, as well as interests which may be and are filed, though filing was not required for perfection under Section 9--302.  (
Note that under Section 9--302(3) the filing provisions of this Article do not apply when a state had enacted a certificate of title law.  Thus, where motor vehicles are concerned, in a state having such a certificate of title law, perfection will be under that law.
) So long as the security interest remains unperfected, not only the buyers described in subsection (2) but the purchasers described in Section 9--301 will take free of the interest. 
After a financing statement has been filed or after compliance with the certificate of title law, all subsequent buyers, under the rule of subsection (2), are subject to the security interest
."  (Emphasis added.) 810 ILCS Ann. 5/9--307, Uniform Commercial Code Comment, at 410 (Smith-

Hurd 1993).

It is readily apparent from this Comment that section 9--

307(2) applies to "all interests *** in motor vehicles," contrary to defendant’s assertion that said subsection (2) has no applicability to motor vehicles.  Moreover, the Comment is clear in stating that, once there has been compliance with the certificate of title law, all subsequent buyers are subject to the perfected security interest under section 9--307(2).  To reiterate, in the instant appeal, plaintiff loaned the Millers $15,472 for the purchase of the Camaro.  The Millers signed a note, which was secured by the Camaro and was in plaintiff’s favor.  Thereafter, plaintiff perfected its security interest in the Camaro by delivering to the Illinois Secretary of State a certificate of title for the Camaro that contained the name and address of the lienholder along with the required filing fee.  The Millers subsequently placed the Camaro with Johnson’s Car World for purposes of selling the vehicle.  Subsequently, Johnson’s Car World sold the Camaro to defendant.  Section 9--307(2) clearly applies to the appeal at bar.

Plaintiff cites a case which is very much on point.  In 
Martin Brothers Implement Co. v. Diepholz
, 109 Ill. App. 3d 283 (1982), the plaintiff sold Larry Allen a Caterpillar bulldozer.  The plaintiff was to be paid in installments and retained a security interest in the bulldozer.  Allen later sold the bulldozer to Delbert Diepholz, a farm implement dealer.  Diepholz did not check with the Secretary of State to ascertain if there was any outstanding security interest against the bulldozer.  Further, he had no actual knowledge of the plaintiff's security interest in the machine.  Diepholz later sold the bulldozer to Paul Compton.  Larry Allen subsequently defaulted on the loan from plaintiff, who brought suit against him in Champaign County.  Later the plaintiff filed suit against Diepholz in Coles County, and Diepholz joined Allen as a third-party defendant.  After much legal wrangling which is of little relevance here, the plaintiff filed an amended complaint against Compton, seeking money damages and replevin of the bulldozer.  Compton filed a motion for summary judgment and stated in the accompanying affidavit that he purchased the bulldozer from Diepholz, who was a seller of such equipment; that he paid fair market value for the machine; and that he was unaware the sale was in violation of the plaintiff's security interest in the bulldozer. The trial court granted Compton’s motion for summary judgment, reasoning that Compton was a buyer in the ordinary course of business and Diepholz was a person engaged in the selling of used heavy equipment.  The trial court concluded that Compton took free of the plaintiff’s security interest under section 9--307(1).  The plaintiff cross-appealed from the entry of summary judgment in Compton’s favor.

In addressing the issue of the propriety of entering the motion for summary judgment, the 
Martin Brothers
 court wrote:

"The trial court’s decision is clearly erroneous.  While Compton was undoubtedly a buyer in the ordinary course of business [citation], he could take free of only those security interests created by his seller.  No Illinois court has decided a case involving a buyer in the ordinary course of business and a 'remote' secured party.  However, the decisions of the reviewing courts in our sister States are unanimous in holding that section 9--307 does not protect a buyer in the ordinary course of business from a security interest created by a former owner who is not the buyer’s seller.  [Citations].

In 
Security Pacific National Bank v. Goodman
 (1972), 24 Cal. App. 3d 131, 100 Cal. Rptr. 763, the California court was faced with a factual situation similar to the one presented in the case at bar.  The bank lent money to A in exchange for a security interest in A’s boat.  A later sold his boat to B, a dealer in boats.  B sold to C, a buyer in the ordinary course of business.  A defaulted on his loan and the bank sued C for possession of the boat.  The court held for the bank because the security interest in question was not created by C’s seller (B), but by A, a remote party.  Under these circumstances, the court found that the protection given a buyer in the ordinary course of business by section 9--307(1) was not available to B.

We recognize that the result which flows from this 

construction of the statute may seem unjust.  The buyer who purchases goods from a seller who has created the security interest takes free of that interest even though the buyer could conceivably discover the existence of a security interest by a title search. When a security interest exists in favor of a remote seller, however, that same buyer will not take the goods free and clear of the security interest, even though the burden of locating the remote party’s interest is much greater.  However, this is consistent with the general rule set forth in the Code that a security interest continues in collateral despite a sale or other disposition of that collateral.  [Citation.]  Section 9--307(1) is an exception to this general rule of continuing security. Furthermore, our holding is in accord with the decisions rendered in other States and thus is in keeping with the goal of national uniformity underlying the Code."  
Martin Brothers
, 109 Ill App. 3d at 289-90.

We agree with the reasoning set forth in 
Martin Brothers
. Here, a security interest was perfected by a remote party, the
 
plaintiff, in a transaction with the Millers, who were not defendant’s sellers.  Thus, defendant is not entitled to the protections afforded by section 9--307(1) and, as concluded above, is subject to the limitation upon the protection afforded to  buyers of goods, which is found in section 9--307(2).

The cases cited by defendant are not persuasive.  For example, 
Humphrey Cadillac & Oldsmobile Co. v. Sinard
, 85 Ill. App. 2d 64 (1967), 
Coffman Truck Sales v. Sackley Cartage Co.
, 58 Ill. App. 3d 68 (1978), and 
Wilson v. M & W Gear, Inc.
, 110 Ill. App. 3d 538 (1982), involved situations in which the primary question on appeal was whether the defendants purchased the subject vehicles in the ordinary course of business.  In the instant appeal, there is no argument regarding whether defendant purchased the Camaro in the ordinary course of business.  Further, in 
Finance America Commercial Corp. v. Econo Coach, Inc.
, 95 Ill. App. 3d 185 (1981), the primary issue dealt with the priority among competing security interests, an issue that is not before the court in the instant appeal.

For the reasons stated above, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

McLAREN and COLWELL, JJ., concur.