RIPPLE, Circuit Judge,
concurring.
In looking at the facts of this case, as alleged by Mr. McClellan and taken as true by us on this motion to 'dismiss, there is an intuitive sense that Ms. Cantrell should not be able to escape the consequences of her deception. Our task, however, is to determine whether there is any specific statutory exception to the discharge of debts in bankruptcy, as set forth in 11 U.S.C. § 523, that applies.
1.
Given the overall structure of § 523, it seems clear that Congress intended § 523(a)(2)(A) to cover debts relating to the procurement of money or property by fraud and § 523(a)(6) to apply in a situation such as the one before us. Section 523(a)(2)(A) excepts from discharge any debt “for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — (A) false pretenses, a false representation, or actual fraud....” 11 U.S.C. § 523(a)(2). The language “obtained by” clearly indicates that the fraudulent conduct occurred at the inception of the debt, i.e., the debtor committed a fraudulent act to induce the creditor to part with his money or property. Ms. Cantrell played no role, fraudulent or otherwise, in inducing Mr. McClellan to part with his money or property. Nevertheless, the majority makes a plausible argument that a literal, although perhaps strained, reading of § 523(a)(2)(A) would permit the subsection to cover the situation before us. Section 523(a)(6), however, more easily covers our facts because it reaches any debt for willful and malicious injury to another’s property. I think it is important to point out that § 523(a)(6) provides a far more direct avenue for dealing with a situation such as the one we have before us.
Although Mr. McClellan raised his § 523(a)(6) claim originally, he unfortunately did not make this argument to the district court, and therefore we would consider such an argument to have been waived. Under the circumstances here, however, I think it makes little sense to invoke the waiver doctrine when we are according the creditor the same relief under another subsection. Under the majority’s approach, we are now ignoring the proper avenue of relief in favor of an awkward and ill-fitting one. We ought not allow a litigant to impede this court from fulfilling its duty to clarify the law for future litigants.
2.
In looking at § 523, I believe, as stated above, that the provision that most aptly describes the situation here is § 523(a)(6). This subsection exempts from discharge any debt “for willful and malicious injury by the debtor to another entity or to the property of another entity.” 11 U.S.C. § 523(a)(6).
According to Mr. McClellan, he entered into an agreement to sell his ice machines to Ms. Cantrell’s brother, Rodney Cantrell. Although the sales agreement provided that a security interest would secure the purchase price of the ice machines, Mr. McClellan never perfected or filed his security interest. Rodney Cantrell paid the initial installment but failed to pay the remainder of the purchase price. Mr. *897 McClellan then filed an action in Illinois state court for an injunction and damages. Two years later and while the state court suit was still pending, Rodney Cantrell sold the ice machines to Ms. Cantrell for $10.00 and “other good and valuable consideration.” Over a year later, Ms. Cantrell sold the ice machines to a third party for $160,000. Mr. McClellan then amended his state court complaint to include Ms. Cantrell. This amended complaint alleged that Ms. Cantrell had participated in the fraudulent acquisition and transfer of the ice machines in violation of the Uniform Fraudulent Transfer Act, 749 Ill. Comp. Stat. Ann. 160/5. Ms. Cantrell later filed for bankruptcy under Chapter 7 of the Bankruptcy Code, and Mr. McClellan then filed an adversary complaint seeking the nondischargeability of Ms. Cantrell’s debt to him, which he claims arose from his security interest.
Section 523(a)(6) applies when the debt- or willfully and maliciously injures the property of another. We therefore need to ask whether Ms. Cantrell has a debt to Mr. McClellan for (1) willfully and maliciously (2) injuring (3) Mr. McClellan’s property.
The first question is whether Ms. Cantrell has a debt owing to Mr. McClellan. The definitions section of the Bankruptcy Code defines “debt” as a liability on a claim, see 11 U.S.C. § 101(12), and “claim” as a right to payment, see id. § 101(5). According to the legislative history Of the Code, a “claim” is any right to payment, and the term is to be given the broadest possible definition. See S.Rep. No. 95-989, at 21 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5807-08. Thus, a “claim” includes all legal obligations of the debtor, no matter how remote or contingent. See id. at 5808. The legislative history also explains that the term “debt” is coextensive with the term “claim,” i.e., when the debtor has a debt owing to the creditor then the creditor has a claim against the debtor. See id. at 5809. If Mr. McClellan has a right to payment from Ms. Cantrell, then she has a debt owing to Mr. McClellan. Thus, the question remains whether Mr. McClellan has a right to payment from Ms. Cantrell.
At this point, we look to Illinois law. Mr. McClellan has a security agreement with Rodney Cantrell, which he failed to perfect. An unperfected security agreement is always valid between the parties, that is, between Rodney Cantrell and Mr. McClellan. See 810 Ill. Comp. Stat. Ann. § 5/9-201 (“[A] security agreement is effective according to its terms between the parties_”). Thus, Mr. McClellan could pursue, and currently is pursuing, an action against Rodney Cantrell in state court for the amount Rodney Cantrell owes Mr. McClellan.
Rodney Cantrell always had the right to sell the collateral covered by his security agreement. See id. § 5/9-205. Similarly, Mr. McClellan always had the right to payment under his security agreement, even after the sale of the collateral because, under Illinois law, Mr. McClellan has a security interest in the proceeds from the sale of the collateral. See id. § 5/9-203(3). Unfortunately, in this case, the proceeds from the sale of the collateral — the ice machines — were only $10 and other good and valuable consideration. Thus, we now need to consider whether Mr. McClellan may proceed against Ms. Cantrell, as the purchaser of the collateral, pursuant to his security interest.
According to the official comment to the Illinois Commercial Code § 9-201, the general rule is that a security agreement is effective between the parties and against third parties. See id. § 5/9-201. An exception to this general rule is for a security interest that has not been perfected. Then, the unperfected security interest is subordinate to the rights of perfected security interests, lien creditors, including trustees in bankruptcy, and a buyer not in the ordinary course of business to the extent the buyer gives value and receives delivery of the collateral without knowledge of the security interest and before it *898 is perfected. See id. § 5/9-301. A “buyer in the ordinary course of business” buys the goods “from a person in the business of selling goods of that hind.” Id. § 5/1— 201(9). Thus, Ms. Cantrell was a buyer not in the ordinary course because Rodney Cantrell was not in the business of selling ice machines. See Arcadia Upholstering, Inc. v. 165 Restaurant, Inc., 163 Ill.App.3d 129, 114 Ill.Dec. 368, 516 N.E.2d 523, 526 (Ill.App.Ct.1987). Although Ms. Cantrell is a buyer not in the ordinary course of business, Mr. McClellan’s complaint alleges that Ms. Cantrell did not satisfy the other requirements for priority, that is, she did not give value nor receive the collateral without knowledge of Mr. McClellan’s security interest. Therefore, because Ms. Cantrell was not a good faith purchaser of the collateral, Mr. McClellan’s security interest takes priority over her interest in the collateral, that is, she takes the collateral subject to his security interest. See Milledgeville Community Credit Union v. Corn, 307 Ill.App.3d 8, 240 Ill.Dec. 270, 716 N.E.2d 864, 870 (Ill.App.Ct.1999) (recognizing the general rule set forth in the Code that “ ‘a security interest continues in collateral despite a sale or other disposition of that collateral’ ” (quoting Martin Brothers Implement Co. v. Diepholz, 109 Ill.App.3d 283, 64 Ill.Dec. 768, 440 N.E.2d 320 (Ill.App.Ct.1982))). Because she sold the collateral to a disinterested third person, Mr. McClellan has a security interest, and right to payment, in the proceeds from the sale, see 810 Ill. Comp. Stat. Ann. § 5/9-203(3), and Ms. Cantrell has a debt owing to Mr. McClellan. To continue with the other elements of § 523(a)(6), Mr. McClellan’s property is his security interest, which carried over on the ice machines because Ms. Cantrell was not a good faith purchaser. See 810 Ill. Comp. Stat. Ann. § 5/1-201(37) (“ ‘Security interest’ means an interest in personal property or fixture which secures payment or performance of an obligation.”); see also Williams v. Chartwell Fin. Servs., Ltd., 204 F.3d 748, 754 (7th Cir.2000) (Under Illinois law, “the creation of a security interest gives a creditor an interest in property.”). Ms. Cantrell injured Mr. McClellan’s property because she prevented him from collecting on the debt he was owed. Finally, Mr. McClellan has alleged that Ms. Cantrell intentionally and maliciously injured his property because she intended to prevent him from collecting on his claim. He states that, in the face of Rodney Cantrell’s debt to him and of the ensuing lawsuit, she purchased the ice machines and then sold them to a disinterested third party. These acts, Mr. McClellan claims, show that she had the requisite state of mind for willful and malicious injury. Therefore, Mr. McClellan has alleged that Ms. Cantrell owes him a debt for willfully and maliciously injuring his property, and he could have pursued his claim against Ms. Cantrell under § 523(a)(6).
Instructive in this case is In re Bammer, 131 F.3d 788 (9th Cir.1997) (en banc). In that case, the mother embezzled money from several victims, including the plaintiff, and was indicted. While she was negotiating a plea agreement, which included an order for restitution, she transferred her real property to her son. This act prevented the plaintiff from recovering on his claim against the mother under the restitution order, a consequence the son knew about. The plaintiff then filed an action against both the mother and the son for fraudulent transfer. -When the son filed for bankruptcy, the plaintiff was allowed to prevent the discharge of his debt in the son’s bankruptcy proceedings. The Ninth Circuit held that, under § 523(a)(6), the son maliciously injured the plaintiffs property by impairing the plaintiffs right to recover his debt from the mother.
Here, while Mr. McClellan’s suit was pending against Rodney Cantrell, Ms. Cantrell bought the ice machines, which prevented Mr. McClellan from recovering on his claim under the security agreement. When Ms. Cantrell filed for bankruptcy, Mr. McClellan should have been able to prevent the discharge of the debt because Ms. Cantrell had willfully and maliciously *899 injured Mr. McClellan’s property, his security interest, by impairing his right of collection.[1]
I would hold that § 523(a)(6) requires an exception to the discharge of this debt.

. This conclusion holds despite the Ninth Circuit opinion of In re Saylor, 108 F.3d 219 (9th Cir.1997). In Saylor, the plaintiff filed suit for fraudulent transfer against the defendant. The defendant, however, filed for bankruptcy before the plaintiff was awarded judgment on his claim. The plaintiff then attempted to prevent the discharge of his debt in the defendant’s bankruptcy proceeding under § 523(a)(6). The court held that he did not have "property” that was injured because he did not have a judgment at the time the defendant filed for bankruptcy, nor did he have a security interest. Obviously, the distinguishing factor here is that Mr. McClellan held a security interest at the time Ms. Cantrell filed for bankruptcy, and, therefore, he had property capable of being injured.