2022 IL App (3d) 210013

Opinion filed June 27, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| MICHAEL J. MCGRATH, as Trustee of the Michael J. McGrath Trust No. 1, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| ADDY & MCGRATH FIREWORKS, INC.; HENRY ADDY, Individually and d/b/a Addy Racks; RYAN MCGRATH; ADDY PYROTECHNICS, INC.; ADDY LOGISTICS, INC.; WAYNE'S WORLD FIREWORKS, LLC; ACE-E, LLC; ACE PYRO, LLC; ACE PYRO DISPLAYS, LLC; ILLINOIS NATIONAL TRADE CENTERS, LLC; and JO-CARROL DEPOT LRA, | ) ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-21-0013 Circuit No. 17-MR-591 |
| Defendants | ) ) | |
| (Wayne's World Fireworks, LLC; Ace-E, LLC; Ace Pyro, LLC; and Ace Pyro Displays, LLC, | ) ) ) | The Honorable |
| Defendants-Appellants). | ) ) | John C. Anderson, Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Michael McGrath, as Trustee of the Michael J. McGrath Trust No. 1, entered into a loan and security agreement with Addy & McGrath Fireworks, Inc. (AMF), whereby plaintiff agreed to loan AMF $1 million in exchange for a security interest in AMF's inventory, including fireworks. When AMF failed to pay amounts due under the loan and security agreement, plaintiff filed suit against AMF; its owners, Ryan McGrath and Henry Addy; other entities owned by Addy (Addy Logistics, Inc. and Addy Pyrotechnics, Inc.); purchasers of AMF's fireworks (Wayne's World Fireworks, LLC and Ace Pyro, LLC); and other entities (Ace-E, LLC and Ace Pyro Displays, LLC). The trial court granted summary judgment to plaintiff and against Ace Pyro, LLC, Ace-E, LLC and Ace Pyro Displays, LLC (collectively "Ace") and Wayne's World, requiring Ace and Wayne's World to pay plaintiff damages, including attorney fees. Wayne's World and Ace appeal, arguing that the trial court erred in (1) ruling that plaintiff had a valid security interest in the fireworks they purchased; (2) finding they were not buyers in the ordinary course of business; (3) calculating plaintiff's damages; and (4) entering judgment against non-interested parties. We affirm the trial court's entry of summary judgment in favor of plaintiff, reduce the award of damages and remand for the trial court to dismiss non-interested parties.

¶ 2                                    I. BACKGROUND

¶ 3     In September 2015, Ryan McGrath and Henry Addy created, incorporated and registered AMF in Illinois. McGrath and Addy were the sole owners and operators of AMF, with McGrath as the majority shareholder and president and Addy as the minority shareholder and secretary. AMF operated under an assumed business name of "PyroNation," which it registered with the Illinois Secretary of State on October 22, 2015.

¶ 4　　　　On October 30, 2015, plaintiff Michael McGrath, as Trustee of the Michael J. McGrath Trust No. 1, entered into a loan and security agreement with AMF. The agreement provided that plaintiff would loan AMF $1 million, the majority of which would be used by AMF to purchase "containers of Professional pyrotechnics" and "containers of Consumer pyrotechnics." In exchange, AMF agreed to repay the loan with interest and granted plaintiff a security interest in any inventory held or later acquired by AMF, including fireworks. Section 4.12 of the agreement provided: "Debtor has duly obtained and now holds all licenses, permits, certifications, approvals and the like required by federal, state and local laws of the jurisdictions in which Debtor conducts its business, and each remains valid and in full force and effect." Section 9.4 of the agreement provided: "Debtor agrees to pay to Creditor *** all expenses, including reasonable attorneys' fees and court costs paid or incurred by Creditor in exercising or enforcing any of its rights hereunder ***." In November 2015, plaintiff filed a Uniform Commercial Code (UCC) (810 ILCS 5/1-101 *et seq*. (West 2014)) financing statement with the State of Illinois, evidencing its security interest in AMF's collateral.

¶ 5　　　　According to Ryan McGrath, AMF applied for a Federal Explosives License from the Bureau of Alcohol, Tobacco, Firearms and Explosives (Bureau) in April 2016. However, AMF did not obtain that license or an Illinois Pyrotechnics License from the Illinois Department of Natural Resources (Department). Those licenses were necessary for AMF to lawfully purchase, possess, and sell 1.3G fireworks.

¶ 6　　　　Addy owned and operated two separate business entities in addition to AMF: Addy Pyrotechnics, Inc. and Addy Logistics, Inc. Addy Pyrotechnics possessed a valid license for 1.3G fireworks. As a result, Addy purchased 1.3G fireworks on behalf of AMF under Addy Pyrotechnic's license number.

3

¶ 7    In early 2016, AMF, under its registered and assumed name of PyroNation, used $287,471.25 of the $1 million plaintiff loaned it to purchase 1.3G display fireworks from three Chinese fireworks manufacturers—Crown Pyrotechnics, Inc., Jiangxi Province Lidu Fireworks Corporation, and Sunny International Co. AMF agreed to pay the sellers an additional $100,689.56 after the fireworks were delivered.The invoice from Crown lists the buyer as PyroNation. The invoices from the other two sellers list the buyer as Addy Pyrotechnics. After the fireworks were delivered, they were stored in bunkers leased by AMF. AMF held a valid storage license with the Department, allowing it to store fireworks. AMF stamped many of the containers of the fireworks with the name "PyroNation."

¶ 8    In September 2016, Ryan McGrath had a discussion with Nelson Lewis, president of Wayne's World, LLC, about selling the fireworks AMF purchased from the Chinese manufacturers to Wayne's World. Around the same time, Addy began having regulatory problems, and the Department directed Addy to seek buyers for the fireworks or risk the Department destroying them.

¶ 9    On January 17, 2017, with the approval and oversight of the Department, defendants Wayne's World and Ace Pyro purchased the fireworks from Addy for $35,000 in cash and agreed to assume the $100,689.56 in outstanding debt owed the Chinese manufacturers. Addy never distributed the proceeds of the sale to AMF or Ryan McGrath.

¶ 10    Neither AMF nor Ryan McGrath knew about or approved of the sale of the fireworks to Wayne's World or Ace Pyro. Addy represented to Wayne's World, Ace Pyro, and the Department that the fireworks were owned by him and Addy Pyrotechnics. Lewis knew the fireworks Addy sold him were the same fireworks Ryan McGrath discussed selling to him a few months earlier. The license number used in the sale belonged to Addy Pyrotechnics. Wayne's World later sold the

4

fireworks it purchased from Addy for $162,624.40. Ace retained some of the fireworks it purchased from Addy and sold the rest for $55,481.51.

¶ 11 In May 2017, plaintiff filed a 13-count complaint against defendants AMF, d/b/a PyroNation; Henry Addy, d/b/a Addy Racks; Ryan McGrath; Addy Pyrotechnics; Addy Logistics; Wayne's World; Ace; Illinois International Trade Centers, LLC; and Jo-Carrol Depot LRA. The complaint alleged that AMF and its owners defaulted on the loan and security agreement by failing to repay the loan. Count I requested declaratory relief, seeking a declaration that it had a superior perfected security interest in the collateral of AMF, including any collateral purchased and held by any defendants. Count II alleged breach of contract against AMF. Count III alleged breach of contract against Addy. Count IV alleged breach of contract against Ryan McGrath. Count V alleged conversion against Addy. Count VI alleged conversion against Addy Pyrotechnics and Addy Logistics. Count VII alleged replevin and detinue against AMF, Ryan McGrath, and Addy. Count VIII alleged replevin and detinue against Addy, Addy Pyrotechnics, and Addy Logistics. Count IX alleged replevin and detinue against Wayne's World. Count X alleged replevin and detinue against Ace. Count XI alleged conversion against Wayne's World. Count XII alleged conversion against Ace. Count XIII alleged fraudulent conveyance against Addy, Addy Pyrotechnics, and Addy Logistics.

¶ 12 Wayne's World and Ace filed a motion to dismiss, arguing that the fireworks they purchased were not subject to plaintiff's security interest because (1) AMF did not have a license or permit from the Bureau or Department to import, manufacture, or deal in explosive materials and (2) they purchased the fireworks in the ordinary course of business. The trial court denied the motion.

5

¶ 13    In July 2017, the court entered default judgment against Addy, Addy Pyrotechnics, Inc., and Addy Logistics, Inc., in the amounts of $1,335,952.01 (counts III, V and XIII) and $255,270.41 (counts VI and XIII). In February 2018, Wayne's World and Ace filed amended counterclaims (1) seeking declaratory relief against plaintiff, AMF, Addy, Ryan McGrath, and Addy Pyrotechnics (count I), (2) asserting breach of contract against AMF, Addy, Ryan McGrath, and Addy Pyrotechnics (count II), (3) alleging fraud in the inducement against AMF and Ryan McGrath, (count III), (4) alleging fraud in the inducement against Addy and Addy Pyrotechnics (count IV), (5) alleging civil conspiracy against plaintiff, AMF, Ryan McGrath, Addy, and Addy Pyrotechnics (count V), and (6) claiming deceptive trade practices against plaintiff, AMF, Ryan McGrath, Addy, and Addy Pyrotechnics (count VI).

¶ 14    Wayne's World and Ace filed a motion for summary judgment, raising the same arguments they did in their motion to dismiss. Plaintiff also filed a motion for summary judgment, arguing that (1) it held a valid and security interest in the fireworks sold to Wayne's World and Ace, (2) AMF did not authorize the sale and transfer of the fireworks to Ace or Wayne's World, and (3) Ace and Wayne's World were not buyers in the ordinary course. Plaintiff also filed a motion for summary judgment with respect to Wayne's World's and Ace's civil conspiracy counterclaim (count V). AMF and Ryan McGrath filed a motion for summary judgment against Ace and Wayne's World for the counterclaims asserted against them. Finally, Wayne's World and Ace filed a motion for summary judgment for all their counterclaims against AMF, Ryan McGrath, Addy, and Addy Pyrotechnics.

¶ 15    In January 2020, the trial court entered an order granting summary judgment to plaintiff on count I (declaratory relief), counts IX and X (replevin and detinue against Wayne's World and Ace), and counts XI and XII (conversion against Wayne's World and Ace) of his complaint. With

respect to Wayne's World's and Ace's counterclaims, the trial court granted summary judgment in favor of plaintiff on count I (declaratory judgment), count V (civil conspiracy), and count VI (deceptive trade practices) and in favor of AMF and Ryan McGrath on count II (breach of contract), count III (fraud in the inducement), count V (civil conspiracy) and count VI (deceptive trade practices).

¶ 16 Thereafter, the trial court entered an order dismissing defendants AMF, Ryan McGrath, Addy Logistics, International Trade Centers, LLC, and Jo-Carrol Depot LRA without prejudice. Plaintiff then filed its motion to prove damages. In its motion, plaintiff asserted that the fair market value of the fireworks sold to Ace and Wayne's World was their wholesale value plus a profit expectation of 30 percent, which Ryan McGrath stated during his deposition was standard in the fireworks industry. Plaintiff also sought attorney fees from both Ace and Wayne's World, claiming damages totaling $202,403.22 from Ace and $144,338.61 from Wayne's World.

¶ 17 Ace and Wayne's World filed a motion to modify or vacate the court's summary judgment order. Ace and Wayne's World also filed a response to plaintiff's motion to prove damages, arguing that the value of the fireworks was much less than that asserted by plaintiff. They also argued that plaintiff was not entitled to attorney fees or expected profits above the wholesale price of the fireworks. They asked the court to limit the damages they owed to $42,470.38. The trial court denied Wayne's World's and Ace's motion to modify/vacate. Thereafter, the court entered an order on damages, requiring Ace to pay plaintiff $202,403.22 and Wayne's World to pay plaintiff $144,338.61, which included attorney fees.

¶ 18 II. ANALYSIS

¶ 19 A. Validity of Plaintiff's Security Interest

7

¶ 20    Defendants Ace and Wayne's World argue that because AMF did not have a license to acquire or possess fireworks, (1) AMF did not have adequate "rights in the collateral," to create a security interest in the fireworks at issue, (2) the loan and security agreement was illegal and cannot be enforced, and (3) plaintiff should not be allowed to recover under the loan and security agreement because he did not properly investigate whether AMF was properly licensed.

¶ 21    Article 9 of the UCC (810 ILCS 5/9-109(a)(1) (West 2020)) "applies to any transaction, regardless of its form, that intends to create a security interest in personal property." *Malek v. Gold Coast Exotic Imports, LLC*, 2018 IL App (1st) 171459, ¶ 17. "A security interest is the secured party's rights in the collateral held by the debtor." *Id.* The owner of property becomes a "debtor" for purposes of the UCC by pledging his property as collateral for a debt. See *Motz v. Central National Bank*, 119 Ill. App. 3d 601, 607 (1983).

¶ 22    Typically, an agreement between parties that a security interest attaches to the debtor's collateral is evidenced by a written, authenticated security agreement. *Malek*, 2018 IL App (1st) 171459, ¶ 21; see also 810 ILCS 5/9-102(a)(74) (West 2020) (defining a "security agreement" as "an agreement that creates or provides for a security interest"). A "[s]ecured party" is "[a] person in whose favor a security interest is created or provided for under a security agreement." 810 ILCS 5/9-102(a)(73)(A) (West 2020). A secured party perfects its security interest by filing a financing statement with the Secretary of State, and this places third parties on notice of that party's interest in the collateral. See *id.* § 9-310(a); *Malek*, 2018 IL App (1st) 171459, ¶ 21. Once the interest in the original collateral is perfected, the security interest in the proceeds from the collateral is also perfected. 810 ILCS 5/9-315(c) (West 2020); *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 272 Ill. App. 3d 370, 377 (1995).

¶ 23 Under section 9-203(b) of the UCC, a security interest is created and enforceable against the debtor and third parties if (1) value has been given, (2) the debtor has rights in the collateral or the power to transfer such rights to a secured party, and (3) the debtor and the secured party have agreed that a security interest shall attach to the collateral. 810 ILCS 5/9-203(b) (West 2020). The UCC does not define the term "rights in the collateral." *Midwest Decks*, 272 Ill. App. 3d at 376. However, it is generally recognized that rights in the collateral are sufficient if the debtor has (1) possession and title (*id.*), or (2) something more than "naked possession" (*Brown v. United States*, 622 F. Supp. 1047, 1050 (D.S.D. 1985)). As long as the debtor has possession and "some ownership interest in the collateral," a security interest will attach. *Id*. This is true even if the debtor lacks formal title to the goods. See *Andrews v. Mid-America Bank & Trust Co.*, 152 Ill. App. 3d 139, 143 (1987); *Central National Bank of Mattoon v. Worden-Martin, Inc.*, 90 Ill. App. 3d 601, 603-04 (1980).

¶ 24 Courts will not enforce an illegal contract or any rights that arise from an illegal contract. *Goodrich v. Tenney*, 144 Ill. 422, 430 (1893); *Ritacca v. Girardi*, 2013 IL App (1st) 113511, ¶ 32. A contract is illegal where (1) its terms violate Illinois or federal law (see *Gamboa v. Alvarado*, 407 Ill. App. 3d 70, 75 (2011)) or (2) it requires one or both parties to perform an illegal act (see *St. Louis, Jacksonville & Chicago R.R. Co. v. Mathers*, 104 Ill. 257, 259 (1882)).

¶ 25 A security agreement is valid and enforceable if it does not require either the debtor or the lender to engage in illegal activity, even if the debtor uses the lender's funds to engage in illegal conduct. See *In re Kalisch*, 413 B.R. 115, 134 (Bankr. S.D.N.Y. 2008). In *Kalisch*, the debtor, Marco, entered into a loan agreement with Maple Trade Finance Corporation, pursuant to which Maple Trade agreed to loan Marco $1.5 million to purchase diamonds. *Id.* at 118. Marco and Maple Trade also entered into a security agreement that granted Maple Trade a security interest in

9

collateral, consisting of an apartment in Manhattan, to secure the loan. *Id.* The loan documents represented and warranted that the diamonds would be legally imported, required Marco to comply with all "valid regulations, laws and orders of any governmental authority," and prohibited Marco from violating "any provision of law or statute." *Id.* at 128-29. Despite those provisions in the loan documents, Marco used the loan proceeds to illegally obtain and import diamonds from Brazil. See *id.* at 118-19. Marco argued that because he used the proceeds from Maple Trade's loan illegally, the security agreement was unenforceable, and Maple Tree could not foreclose on its collateral. *Id.* at 134. The court disagreed. *Id.*

¶ 26        The court determined that the loan agreement between Marco and Maple Trade was not itself "immoral or illegal, as it did not violate the law by its terms." *Id.* Rather, the loan agreement required that the loan proceeds be used to purchase diamonds from authorized sources. *Id.* Because the illegal activities orchestrated by Marco "were not directly contemplated by or necessary to the performance of the loan agreement," the loan agreement was valid and enforceable *Id.* The court concluded that the transaction between Marco and Maple Trade was not infected by Marco's misconduct and that Maple Trade was entitled to enforce its remedies under the loan documents, including foreclosing on its collateral. *Id.*

¶ 27        Marco also argued that Maple Trade did not have a valid security interest in the collateral used to secure the loan because Maple Trade knew or should have known that its loan proceeds would be used to finance unlawful activities. See *id.* at 120. The court rejected Marco's argument, finding the Marco "did not make disclosures sufficient to put Maple Trade on actual or inquiry notice of the corrupt practices underlying his sketchy business plan." *Id.* at 123. The court found that while Maple Trade may have been "insufficiently diligent" and "perform[ed] an inadequate investigation of its borrower," such conduct did not invalidate the security agreement or preclude

10

Maple Trade from recovering under the agreement. *Id.* at 132-33. The court noted: "In comparing the relative fault of Marco and Maple Trade, Marco is an active wrongdoer while Maple Trade simply is a passive lender that financed his bad acts." *Id.* at 132.

¶ 28    Here, the requirements for a valid security interest were met because (1) plaintiff gave AMF value in the form of a $1 million loan, (2) AMF had possession and ownership rights to the fireworks because they were purchased with AMF's funds, stored in a facility leased by AMF, and stamped with AMF's assumed business name, and (3) plaintiff and AMF entered into the loan and security agreement, which gave plaintiff a security interest in AMF's inventory, which included fireworks. See 810 ILCS 5/9-203(b) (West 2020).

¶ 29    Furthermore, the loan and security agreement between plaintiff and AMF was enforceable because it did not contemplate illegal activity. See *Kalisch*, 413 B.R. at 134. The agreement provided that plaintiff would lend AMF money and AMF would provide plaintiff a security interest in its inventory, including any fireworks it acquired, to ensure repayment. The loan and security agreement provided that AMF had obtained and would maintain "all licenses *** required by federal, state and local laws" to conduct its business, which included the purchase and sale of fireworks. That AMF failed to acquire the licenses that it asserted in the agreement it already possessed does not render the loan and security agreement illegal because the agreement did not require either party to violate the law. See *id.* Plaintiff took no part in illegal conduct, and illegal conduct was not necessary to perform the loan and security agreement. Therefore, plaintiff was entitled to enforce its rights and remedies under the that agreement. See *id.*

¶ 30    Additionally, plaintiff's security interest is not invalidated because of any wrongdoing on plaintiff's part. Plaintiff was merely a passive lender, not an active wrongdoer. See *id.* at 133. Based on AMF's representations in the loan and security agreement that it had obtained and would

11

maintain all licenses necessary to conduct its business, plaintiff had no knowledge or reason to know that AMF would illegally acquire fireworks without a valid license. Any failure on plaintiff's part to investigate whether AMF had actually obtained all necessary licenses prior to loaning money to AMF does not invalidate the loan and security agreement or preclude plaintiff from recovering under the agreement. See *id.* at 132-33.

¶ 31    Finally, plaintiff timely filed its UCC financing statement with the Secretary of State, so as soon as AMF took possession of the subject fireworks, plaintiff's security interest in them was perfected. See 810 ILCS 5/9-310(a) (West 2020); *Malek*, 2018 IL App (1st) 171459, ¶ 21; *Andrews*, 152 Ill. App. 3d at 143-44. Once plaintiff's interest in the fireworks was perfected, plaintiff's interest in the proceeds from the fireworks was also perfected. See 810 ILCS 5/9-315(c) (West 2020); *Midwest Decks, Inc.*, 272 Ill. App. 3d at 377. Thus, the trial court properly ruled that plaintiff had a valid security interest in the subject fireworks and the proceeds therefrom.

¶ 32                          B. Buyer in the Ordinary Course of Business

¶ 33    Alternatively, Wayne's World and Ace argue that even if plaintiff possessed a valid security interest in the subject fireworks, they took free of that interest as buyers in the ordinary course of business. They contend that because Addy was acting as an agent of AMF when they purchased the fireworks from him, they meet the requirements of buyers in the ordinary course of business.

¶ 34    A "[b]uyer in the ordinary course of business" is "a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind." 810 ILCS 5/1-201(b)(9) (West 2020)). "[A] buyer in the ordinary course of business takes free of a security interest created by the buyer's seller ***." 810 ILCS 5/9-320(a) (West 2020).

12

However, a buyer in the ordinary course of business is not protected from a security interest created by a former owner of the goods who is not the buyer's seller. *Martin Brothers Implement Co. v. Diepholz*, 109 Ill. App. 3d 283, 289 (1982); see also *Milledgeville Community Credit Union v. Corn*, 307 Ill. App. 3d 8, 15 (1999) (buyer did not take vehicle free of security interest perfected by a remote party who was not buyer's seller).

¶ 35    Whether a person is a "buyer in the ordinary course of business" is normally a question of fact. *Bank One, Milwaukee, N.A. v. Loeber Motors, Inc.*, 293 Ill. App. 3d 14, 20 (1997). However, a trial court can determine on cross-motions for summary judgment whether a party qualifies as a "buyer in the ordinary course of business." *Id.*

¶ 36    An agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf. *McNerney v. Allamuradov*, 2017 IL App (1st) 153515, ¶ 64. Although the existence of an agency relationship is typically a question of fact, it becomes a question of law when the facts regarding the relationship are undisputed or no liability exists as a matter of law. *Id.* The burden of proving the existence of an agency relationship and the scope of authority is on the party seeking to charge the alleged principal. *Id.*

¶ 37    An agent's authority may be actual or apparent. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 34. "Actual agency consists of a principal/agent, master/servant, or employer/employee relationship and the principal's control or right to control the conduct of the agent, servant, or employee." *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 64. Apparent agency liability occurs when a purported principal has created the appearance that someone is his or her agent, and an innocent third party has reasonably relied on such appearance to his detriment. *Id.*

¶ 38    "Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523 (1993). To impose liability based on apparent authority, a plaintiff must demonstrate that (1) the principal held out the agent as having authority or knowingly acquiesced in the agent's exercise of authority, (2) the third person reasonably concluded that an agency relationship existed because of the actions of the principal and agent, and (3) the third person detrimentally relied on the agent's apparent authority. *Jacobs*, 2017 IL App (1st) 151107, ¶ 31 (citing *Oliveira-Brooks v. Re/Max International, Inc.*, 372 Ill. App. 3d 127, 137 (2007)). The apparent authority of an agent must be based on words and acts of the principal and not on anything the agent himself has said or done. *Graver v. Pinecrest Volunteer Fire Department*, 2014 IL App (1st) 123006, ¶ 17.

¶ 39    Here, for Wayne's World and Ace to qualify as buyers in the ordinary course of business, they must have purchased the fireworks from AMF or one of its agents because a buyer in the ordinary course only takes free of a security interest created by its seller. See 810 ILCS 5/9-320(a) (West 2020); *Diepholz*, 109 Ill. App. 3d at 289; *Milledgeville Community Credit Union*, 307 Ill. App. 3d at 15. However, the facts in this case do not support Wayne's World's and Ace's contention that they purchased the fireworks from Addy as an agent of AMF. Both Nelson and Enzer provided deposition testimony that Addy told them he was acting on behalf of Addy Pyrotechnics when he sold the fireworks. The name listed on the invoices as the seller of the fireworks was "Addy Pyrotechnics." Addy never suggested to Nelson nor Enzer that he was selling the fireworks on behalf AMF. Additionally, McGrath never communicated to Nelson or Enzer that Addy was acting on behalf of AMF and expressly prohibited Addy from selling the fireworks on behalf of AMF. Furthermore, Addy's actions following the sale of the fireworks establish that he

14

was not acting as an agent for AMF. Addy never provided the proceeds of the sale of the fireworks to McGrath or placed them in an account owned by AMF.

¶ 40 Addy was acting for himself and Addy Pyrotechnics, not AMF, when he sold the fireworks to Wayne's World and Ace. Because Addy was not acting as an agent for AMF when he sold the fireworks to Wayne's World and Ace, they did not take the fireworks free of AMF's security interest. See 810 ILCS 5/9-320(a) (West 2020); *Diepholz*, 109 Ill. App. 3d at 289; *Milledgeville Community Credit Union*, 307 Ill. App. 3d at 15.

¶ 41 C. Damages

¶ 42 Wayne's World and Ace argue that the trial court erred in ordering them to pay (1) damages equal to the wholesale value of the fireworks plus anticipated lost profits, and (2) attorney fees.

¶ 43 1. Measure of Damages

¶ 44 The plaintiff must prove damages to a reasonable degree of certainty. *Beasley v. Pelmore*, 259 Ill. App. 3d 513, 523 (1994)). In a conversion action, the proper measure of damages is the market value of the property at the time of the conversion. *First National Bank of Mount Prospect v. York*, 27 Ill. App. 3d 614, 616 (1975). It is the plaintiff's burden to prove the fair market value of property. See *Benford v. Everett Commons, LLC,* 2014 IL App (1st) 130314, ¶ 35.

¶ 45 The wholesale value of an item is less than its market value. See *Crandall v. Country Mutual Insurance Co.*, 81 Ill. App. 3d 140, 144 (1980); *McCracken v. Farmers' Grain Co.*, 215 Ill. App. 551, 554 (1919). In a conversion action, the fair market value of an item can be determined using its wholesale value plus anticipated profit. See *Brown Coal Co. v. Illinois Cent. R. Co.*, 192 N.W. 920, 923 (Iowa 1923) (citing *Butler v. Collins*, 12 Cal. 457 (1859)).

¶ 46 A plaintiff may recover anticipated profits when they can be estimated with " 'reasonable certainty.' " *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 248 (2006) (quoting

15

*Barnett v. Caldwell Furniture Co.*, 277 Ill. 286, 289 (1917)). It is not necessary for lost profits to be proven with absolute certainty. *Id.* (citing *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 315-16 (1987)). "The law requires only that the plaintiff approximate the claimed lost profits by competent evidence." *Id.* Such evidence must tend to establish a basis for the assessment of damages for lost profits to a fair degree of probability. *Id.* (citing *Barnett*, 277 Ill. at 289). "However, recovery of lost profits cannot be based upon conjecture or sheer speculation." *Midland Hotel Corp.*, 118 Ill. 2d at 316. The evidence must afford a "reasonable basis for the computation of damages." *Id.*

¶ 47    Here, the trial court did not err in determining that the proper measure of damages owed plaintiff was the fair market value of the fireworks, which consisted of the wholesale value of the fireworks plus anticipated lost profits. See *York*, 27 Ill. App. 3d at 616; *Crandall*, 81 Ill. App. 3d at 144; *McCracken*, 215 Ill. App. at 554; *Brown Coal Co.*, 192 N.W. at 923. At his deposition, Ryan McGrath, majority owner of AMF, stated that in the fireworks industry, fireworks are generally sold for 30 to 40 percent more than their wholesale cost. McGrath's deposition testimony was sufficient to establish lost profits to a fair degree of probability and adequately supported plaintiff's claim of damages in the amount of the wholesale value of the fireworks plus 30 percent in anticipated profits. See *Tri-G*, 222 Ill. 2d at 248; *Midland Hotel*, 118 Ill. 2d at 316; *Barnett*, 277 Ill. at 289.

¶ 48                                    2. Attorney Fees

¶ 49    "Illinois follows the 'American rule,' which prohibits a prevailing party from recovering its attorney fees from the losing party absent an express statutory or contractual provision." *Oak Forest Properties, LLC v. RER Financial, Inc.*, 2018 IL App (1st) 161704, ¶ 12. "Accordingly, contracts that provide for an award of attorney fees to the prevailing party are in derogation of

common law and must be strictly construed." *Id.* Only parties to a contract are bound by its terms. See *Kiefer v. Reis*, 331 Ill. 38, 48 (1928); *Brooks v. Cigna Property & Casualty Cos.*, 299 Ill. App. 3d 68, 72 (1998).

¶ 50    Section 9-607 of the UCC (810 ILCS 5/9-607 (West 2020)) addresses collection and enforcement by a secured party upon default of the borrower. It provides in pertinent part:

> "(c) Commercially reasonable collection and enforcement. A secured party shall proceed in a commercially reasonable manner if the secured party:
>
> (1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and
>
> (2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or secondary obligor.
>
> (d) Expenses of collection and enforcement. A secured party may deduct from the collections made pursuant to subsection (c) reasonable expenses of collection and enforcement, including reasonable attorney's fees and legal expenses incurred by the secured party." 810 ILCS 5/9-607(c)-(d) (West 2020).

UCC Comment 10 to section 9-607 provides:

> "The phrase 'reasonable attorney's fees and legal expenses,' which appears in subsection (d), includes only those fees and expenses incurred in proceeding against account debtors or other third parties. The secured party's right to recover these expenses from the collections arises automatically under this section. The secured party also may incur other attorney's fees and legal expenses in proceeding against the debtor or obligor. Whether the secured party has a right to recover those fees and expenses depends on whether the debtor or obligor has agreed to pay them, as

17

is the case with respect to attorney's fees and legal expenses under Sections 9-608(a)(1)(A) and 9-615(a)(1). The parties also may agree to allocate a portion of the secured party's overhead to collection and enforcement under subsection (d) or Section 9-608(a)." 810 ILCS Ann. 5/9-607, UCC Comment 10, at 759 (Smith-Hurd 2004).

Sections 9-608 and 9-615 of the UCC provide that proceeds collected from a debtor be applied to "the reasonable expenses of collection and enforcement and, *to the extent provided for by agreement* and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party." (Emphasis added.) 810 ILCS 5/9-608(a)(1)(A) (West 2020); *id*. § 9-615(a)(1).

¶ 51 Section 9-607(d) of the UCC allows a secured party to deduct attorney fees and legal expenses incurred for collection and enforcement from the amount it receives from the collateral before applying the collected collateral toward the satisfaction of the secured debt. See *Magnolia Financial Group v. Antos*, 310 F. Supp. 3d 764, 769 (E.D. La. 2018) (construing identical provision of Louisiana law). It does not provide a secured party the right to seek collection expenses, including attorney fees, from an account debtor from whom collateral is collected. *Id.*

¶ 52 Here, the trial court erred in ordering Ace and Wayne's World to pay plaintiff attorney fees. Section 9-607 of the UCC does not grant a secured party the right to attorney fees. See 810 ILCS 5/9-607 (West 2020); *Magnolia*, 310 F. Supp. 3d at 769. Rather, the right to recover such fees comes from the security agreement. See 810 ILCS Ann. 5/9-607, UCC Comment 10, at 759 (Smith-Hurd 2004); 810 ILCS 5/9-608(a)(1)(A), 9-615(a)(1) (West 2020). Here, Section 9.4 of the agreement allowed plaintiff to recover attorney fees. However, the parties to the security agreement were plaintiff and AMF. Ace and Wayne's World were not parties to the security

18

agreement. Thus, they cannot be bound by its fee provision. See *Kiefer*, 331 Ill. at 48; *Brooks*, 299 Ill. App. 3d at 72; *Magnolia*, 310 F. Supp. 3d at 769.

¶ 53 Because plaintiff has cited to no statutory authority, other than section 9-607 of the UCC, entitling it to attorney fees and no agreement exists allowing plaintiff to recover attorney fees from Wayne's World or Ace, the trial court erred in including attorney fees in its award of damages to plaintiff. See *Oak Forest Properties, LLC*, 2018 IL App (1st) 161704, ¶ 12; *Magnolia*, 310 F. Supp. 3d at 769. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we reduce the trial court's award of damages and order Ace to pay damages totaling $173,379.32, and Wayne's World to pay damages totaling $123,638.51.

¶ 54                                          D. Noninvolved parties

¶ 55 Finally, Wayne's World and Ace argue that the trial court should have entered judgment only against Wayne's World and Ace Pyro, LLC, because they were the only entities involved in the purchase and sale of the fireworks at issue in this case. The other Ace entities—Ace-E, LLC, and Ace Pyro Displays, LLC—had nothing to do with the fireworks sales transactions. Plaintiff agrees that judgment should not have been entered against Ace-E, LLC or Ace Pyro Displays, LLC.

¶ 56 We remand the cause to the circuit court with directions to dismiss Ace-E, LLC, and Ace Pyro Displays, LLC, as defendants.

¶ 57                                          III. CONCLUSION

¶ 58 For the foregoing reasons, the judgment of the circuit court of Will County is affirmed in part, modified in part, and the cause is remanded with directions.

¶ 59 Affirmed in part, modified in part, and remanded with directions.

2022 IL App (3d) 210013

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 17-MR-591; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Jon A. Stump, Stephen M. Buck, and Mitch M. Gilfillan, of Quinn Johnston, of Peoria, and John M. Stevens, of Brooke Stevens, P.C., of Muncie, Indiana, for appellants. |
| **Attorneys for Appellee:** | Christopher R. Dunsing, Troy A. Lundquist, of Langhenry, Gillen, Lundquist & Johnson, LLC, of Wheaton, for appellee. |